[Civ. No. 28442.   Second Dist., Div. One.   Mar. 4, 1965.]

HARTFORD ACCIDENT & INDEMNITY COMPANY, Plaintiff and Appellant, v. JAMES V. LARGES et al., Defendants and Respondents.

Schell & Delamer and Fred B. Belanger for Plaintiff and Appellant.

Silver, McWilliams & Sherman and Lawrence Weitzer for Defendants and Respondents.

LILLIE, J.—Hartford appeals from the adverse portions of a judgment in an action for declaratory relief. The insurer had sought a determination that it had no obligation to defend or indemnify, or thereafter pay any judgment rendered against Frank Lyons, doing business as The Lyon's Den, under the

terms and conditions of a comprehensive general automobile liability policy issued to Lyons, and James V. Larges, the named insured in a Hartford family automobile policy. The appeal relates solely to the conclusions reached as to the Larges policy.

The relevant facts are as follows: Lyons was in the catering business. On December 9, 1960, he was engaged to cater for a housing development in Santa Ana; to assist him Lyons hired defendant Larges, who was a bartender, and defendants Smith and Neely. The group was driven to Santa Ana by Lyons in a Ford Vanette owned by Lyons, the vehicle being a van type truck with six wheels (dual wheels on the rear). During the course of the evening Lyons went elsewhere, leaving the Vanette at the housing development. Later the same evening, presumably when the services of the three were no longer needed, on his own initiative Larges took the vehicle and started back to his employer's place of business with the Smith and Neely girls as passengers. The car became involved ~~~ accident, and his two passengers subsequently instituted inst Larges.

Lyons was the owner of a certain Oldsmobile automobile which is described in the family automobile policy issued to him by Hartford. That policy provided not only for the payment on his behalf of all sums he became legally obligated to pay because of injury arising from the operation of the Oldsmobile but also of any nonowned automobile. With regard to a nonowned automobile, under section I those insured are (1) the named insured, and (2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner. The following terms are then defined: "Private passenger automobile" means a "four wheel private passenger, station wagon, or jeep type automobile"; "Non-owned automobile" means an "automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile." Under "Exclusions" there is then the following exclusion clause: "This policy does not apply under Section I: (H) To a non-owned automobile while used (1) in the automobile business by the insured or (2) in any other business or occupation of the insured, except a private passenger automobile operated or occupied by the named insured. . . ."

The trial court found that under the Larges policy the Ford Vanette was a "non-owned automobile" and was not a

"private passenger automobile";[1] it further found that the vehicle at the time of the accident was being operated by Larges in his employer's, and not his own business. From these and other findings the court drew the conclusion of law that the exclusion contained in section I, paragraph 5(H) quoted above, did not apply to the facts at bar; hence Hartford was not entitled to a judgment that it had no obligation to defend or indemnify Larges under the terms of the policy it had issued to him, or to any other relief sought by plaintiff with respect to such policy.

Hartford now contends that it is under no duty to defend the insured named in the subject policy because the evidence, said to be "undisputed," discloses that the vehicle was (1) a nonowned automobile, (2) not a private passenger automobile, and (3) contrary to the trial court's finding, was being operated in an occupation of the insured. Defendants concede that there is no dispute about (1) and (2), *supra*. As to (2), also, Hartford does not press the point that it plays a decisive role in the determination of this appeal—in this connection, the trial court relied on one of Hartford's cases (*Seaford* v. *Nationwide Mutual Ins. Co.*, 253 N.C. 719 [117 S.E.2d 733, 736]) for its determination that "The failure to define 'automobile' with respect to a non-owned automobile, creates an ambiguity which should be resolved in favor of the named insured and the Court should hold that the Ford Vanette was an automobile within the Webster definition." Left for decision, therefore, is the correctness of Hartford's claim ((3), *supra*) that since the vehicle was being used in an occupation of the insured, the exclusion above quoted (section I, paragraph (H)) became applicable.

In addition to *Seaford*, all of Hartford's authorities are non-California cases.[2] All, apparently with two exceptions, are

---

[1]While finding that the Ford Vanette was not a "private passenger automobile" as defined in the policy, it also found that the vehicle "was an automobile within the meaning of said policy." In its memorandum decision, the court points out that the policy does not define the word "automobile" standing alone as used in the definition of "non-owned automobile," although the policy is otherwise with respect to an "owned automobile."

[2]*Allstate Ins. Co.* v. *Hoffman*, 21 Ill.App.2d 314 [158 N.E.2d 428]; *Barnett* v. *City of Monroe* (La.App.) 124 So.2d 249; *Blackwell* v. *United States* (5th Cir.) 321 F.2d 96; *Corcoran* v. *State Automobile Ins. Assn.*, 256 Minn. 259 [98 N.W.2d 50]; *Dickey* v. *General Acc. Fire & Life Assur. Corp.* 328 Pa. 541 [195 A. 875]; *Thomas* v. *Farm Bureau Mutual Ins. Co. of Idaho, Inc.*, 82 Idaho 314 [353 P.2d 776]; *Voelker* v. *Travelers Indemnity Co.* (7th Cir.) 260 F.2d 275.

affirmances of trial court decisions exculpating the insurer from liability pursuant to exclusion clauses closely similar to that under discussion; the *Corcoran* and *Thomas* cases were reversed because the trucks there being used could not be considered, as a matter of law, a "private passenger type" vehicle.

In *Voelker* v. *Travelers Indemnity Co.* (7th Cir.) 260 F.2d 275, the court's approach to the problem is helpful and persuasive. The policy provided that the insuring agreement did not apply to any automobile furnished the insured for "regular use" or any automobile "used in a business or occupation" of said insured. An earlier federal case is quoted for the proposition that " ' "The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so." ' " (260 F.2d 275, 278.) Plaintiff Voelker was licensed by the National Guard so that he would be available for the driving of military vehicles; at the time of the accident (while he was driving a 2½-ton military vehicle) he was regularly employed by Hayes Freight Lines. With respect to the policy's exclusion of any automobile furnished for "regular use" the court said: "It is grossly unreasonable to think that either the insurer or the insured, upon issuance of the policy covering the latter's private passenger automobile and incidentally making such coverage applicable to 'any other automobile,' contemplated that the coverage extended to the insured while driving a truck as a member of the National Guard. Such coverage would have greatly increased the hazard against which the insured was protected, and as a matter of common knowledge would likewise have greatly increased the premium for such coverage." (P. 278.) After noting that the plaintiff was entitled to rely on policy provisions as written by the insurer, the court then stated: "What constitutes 'regular use' depends upon the circumstances of the case." (P. 278.)

While the Larges policy apparently contained no "regular use" provision, and while it is true that the court in *Voelker* went on to hold that the truck was being "used in a business or occupation" of the insured, the decision seems to have turned on the plaintiff's occupation status as a trucker. Of interest, further, is the *Barnett* case where the exclusory language of the policy is almost identical to that found here.

Although there is no "regular use" provision, as in *Voelker,* the court emphasizes the fact that the vehicle involved in the accident had been assigned to the driver "for his regular use in his business, occupation, and employment as a patrolman," and "Except as to a private passenger automobile, the policy, by clear and unmistakable language, excluded coverage of a nonowned automobile used in any business or occupation of the named insured." (124 So.2d 249, 253.)

In the present proceeding, the operation of the Ford Vanette by Larges was a casual one—indeed, he had not been asked to drive the vehicle on any prior occasion. This latter fact is understandable because he was hired as a bartender and not as a driver. All of Hartford's cases, on the other hand, involve persons or situations where the person was specifically employed to operate a motor vehicle because of his driving skill, real or assumed. Thus, in *Seaford* v. *Nationwide Mutual Ins. Co.,* 253 N.C. 719 [117 S.E.2d 733, 736], the operation of the tractor-unit was part and parcel of Seaford's occupation; in *Allstate Ins. Co.* v. *Hoffman,* 21 Ill.App.2d 314 [158 N.E.2d 428], the evidence showed that Harkman's duties were specifically to operate a 2½-ton truck; in *Corcoran* v. *State Automobile Ins. Assn.,* 256 Minn. 259 [98 N.W.2d 50], the person involved was a trucker; in *Dickey* v. *General Acc. Fire & Life Assur. Corp.,* 328 Pa. 541 [195 A. 875], he was a chauffeur; the occupations of the persons involved in *Voelker* v. *Travelers Indemnity Co.* (7th Cir.) 260 F.2d 275, and *Barnett* v. *City of Monroe* (La. App.) 124 So.2d 249, have already been mentioned.

We are of the view that the trial court's interpretation of the subject clause was correct. ▇ We therefore uphold its finding for that reason and for the further reason that "When the construction given an instrument by a trial court appears to be reasonable and consistent with the intent of a party, appellate courts will not substitute another interpretation though it seems equally tenable." (*Teater* v. *Good Hope Dev. Corp.,* 14 Cal.2d 196, 210 [93 P.2d 112].)

The portions of the judgment appealed from are affirmed.

Wood, P. J., and Fourt, J., concurred.