**SEABOARD FIRE & MARINE INSURANCE COMPANY, Plaintiff,**

v.

**Daniel GIBBS et al., Defendants.**

**Civ. A. No. 8794.**

United States District Court
D. South Carolina,
Charleston Division.

March 22, 1967.

As Amended March 23, 1967.

W. H. Brockinton of Brockinton & Brockinton, Charleston, for plaintiff.

J. W. Cabaniss of Grimball & Cabaniss, Charleston, for defendant Thaddeus Brisbane.

HEMPHILL, District Judge.

This action is brought by the insurer of Daniel Gibbs for a declaration that no coverage was provided by their policy of automobile insurance for a two-vehicle collision in which Gibbs was involved. The case was submitted upon a stipulation of facts and the introduction into evidence the depositions of Gibbs and his employer, Aaron Whitney Leland. The facts stipulated are:

1. That on November 10, 1962, the Plaintiff issued to the Defendant Daniel Gibbs its liability insurance policy No. SA 370912 agreeing to insure the Defendant Daniel Gibbs against liability up to the total amount of Twenty-five Thousand ($25,000.00) Dollars for each occurrence or accident and medical expenses up to One Thousand ($1,000.00) Dollars for each person injured in or upon Gibbs' 1951 Dodge pickup truck and that this policy was in full force and effect on December 27, 1962, and that a copy of the policy is annexed hereto as Plaintiff's Exhibit No. 1, and it is stipulated by and between the parties that this is a true copy of the above policy to be admitted as a part of the record.

2. That on December 22, 1962, at about 8:30 in the morning, the Defendant, Daniel Gibbs, was involved in a vehicular accident upon Highway 700, also known as the Rockville Road, Wadmalaw Island, in the County of Charleston, State of South Carolina, while operating a Chevrolet truck bearing S. C. License No. Farm 9531 registered in the name of A. W. Leland, which collided with a 1961 Chevrolet automobile bearing S. C. License No. E185702 owned and operated by the Defendant, H. Evans Townsend, in which 1961 Chevrolet automobile the Defendant, Thaddeus

Brisbane, was a passenger and that the remaining defendants were passengers in the truck operated by the Defendant, Daniel Gibbs.

3. That in December, 1962, Daniel Gibbs reported the accident to Southern Farm Bureau Casualty Insurance Company, the liability insurance carrier for A. W. Leland, covering the truck involved in the collision and that Southern Farm Bureau Casualty Insurance Company undertook an investigation of the accident.

4. That on September 28, 1963, a Summons and Complaint on behalf of Thaddeus Brisbane asking damages for personal injuries allegedly sustained in the collision were served upon Daniel Gibbs and thereafter, in November of 1963, the accident was reported and suit papers were turned over to representatives of the Plaintiff, a copy of the said Summons and Complaint being hereto attached and stipulated to be a true copy thereof. That the Defendant, Daniel Gibbs, had made no previous report of the accident to the Plaintiff.

5. That Plaintiff was invited to appear in the pending action by the attorneys for Thaddeus Brisbane in accordance with a letter from J. W. Cabaniss to Messrs. Brockinton & Brockinton, dated November 7, 1963, copy of which is attached hereto as Exhibit 1 of the Defendant Thaddeus Brisbane and stipulated to be a true copy thereof; that Plaintiff's representative undertook an investigation, in connection with which registered letters were addressed to Daniel Gibbs by Messrs. Brockinton & Brockinton on November 14, 1963, and on November 19, 1963, copies of which are hereto attached and stipulated to be true copies thereof.

6. That the Plaintiff refused to appear and defend on behalf of Daniel Gibbs as will appear from letters from W. H. Brockinton dated December 24, 1963, addressed to Daniel Gibbs and Joseph W. Cabaniss, respectively, copies of which are annexed hereto and made a part hereof as Exhibit 2 of the Defendant, Thaddeus Brisbane, and stipulated to be true copies thereof.

7. That the Defendant, Thaddeus Brisbane, thereafter by letter dated December 28, 1963, from J. W. Cabaniss to Messrs. Brockinton & Brockinton again offered the Plaintiff the opportunity to appear and defend in the action brought against Daniel Gibbs and copy of this letter is annexed hereto as Exhibit 3 of the Defendant, Thaddeus Brisbane and stipulated to be a true copy thereof, but Plaintiff denied coverage and refused to further participate in the handling of the matter.

8. That the Defendant in the present action, Thaddeus Brisbane, entered into a Covenant Not to Sue with A. W. Leland, K. W. Leland and H. Evans Townsend, a copy of which is hereto attached and stipulated to be a true copy thereof, and that an Order of Non-suit without prejudice to any claim against Daniel Gibbs was entered in the aforesaid action, a copy of which is hereto attached and stipulated to be a true copy thereof, and that thereafter, on September 18, 1964, Summons and Complaint in the case of Thaddeus Brisbane versus Daniel Gibbs in the Court of Common Pleas for Charleston County were served upon Daniel Gibbs, a copy of which is hereto attached and stipulated to be a true copy thereof, and copies were forwarded to representatives of Seaboard Fire & Marine Insurance Company by G. M. Howe, Jr., attorney for Daniel Gibbs, on September 22, 1964, and that the Plaintiff has appeared and is defending under a non-waiver agreement entered into on November 22, 1963, with Daniel Gibbs, whereby it reserved all rights to disclaim coverage under the terms and conditions of the policy, a copy of which is hereto attached and stipulated to be a true copy thereof.

9. That the depositions of Daniel Gibbs and Aaron Whitney Leland were taken on March 18, 1966, and

are hereby stipulated to be admitted as a part of the record, all objections made by counsel being reserved for determination by the Court.

The exhibits referred to above are part of the permanent record in the case, and they are not attached to this order. The stipulation is conclusive that there exists an actual controversy between the parties which involves over $10,000. The citizenship of the parties is diverse. The court has jurisdiction. From the testimony introduced by depositions it is necessary to make further findings of fact to determine if the policy provided coverage for the accident. Under the requirements of Rule 52(a) of the Rules of Civil Procedure the findings of fact shall be found specially, and the conclusions of law stated separately.

The insurer contends that there was no coverage under its policy because: (a) the policy provided coverage for a four-wheel vehicle, and the vehicle operated by Gibbs, the named insured, at the time of the accident was a six-wheel truck; (b) the truck was neither an owned automobile nor a non-owned automobile within the meaning defined by the policy; (c) the truck was not a private passenger automobile within the meaning of the policy; and (d) Gibbs' failure to give notice to the insurer was prejudicial to the insurer.

The policy provides that the company "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, arising out of the ownership, maintenance or use of an owned automobile or a non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy * * *."

The policy defines the persons insured "under the liability and medical expense coverages:"

(b) with respect to the use of a non-owned automobile,

(1) the named insured,

(2) a relative, but only with respect to a private passenger automobile or utility trailer, provided the person using such automobile has received the permission of its owner and the use is within the scope of such permission;

"Automobile" is defined in the policy as meaning:

A four wheel land and motor vehicle designed for use principally upon public roads, and except under Part II includes a utility trailer, while used therewith, but "automobile" shall not include any vehicle while located for use as a residence or premises.

A "non-owned automobile" means an "automobile not owned by or furnished or available for the regular use of either the named insured or any resident of the same household, other than a temporary substitute automobile."

The policy expressly excludes coverage:

(c) to a non-owned automobile while used in any other business or occupation, except a private passenger automobile operated or occupied by the named insured or his private chauffeur or domestic servant, or a utility trailer used therewith or with an owned automobile.

Applying the terms of the policy to the occurrence in controversy the inquiry must be whether Gibbs was covered while operating the truck owned by the Lelands.

The named insured Daniel Gibbs was a forty-eight year old resident of Wadmalaw Island who worked for Messrs. A. W. Leland and K. W. Leland as a farmhand on their farm. He had worked for them for more than fifteen years, and he was in their employ at the time of the accident. For the last seven or eight years Gibbs had been driving trucks for the Lelands in connection with their agricultural operations. Gibbs was the only hand on the Leland farm that was qualified to drive the truck,

and it was one of his duties to take the truck home at night and to return with it in the morning and to transport other farmhands to and from the Leland farms. The evidence shows that this involved no deviation from Gibbs' route to and from his place of employment. On some occasions Gibbs was driven home by his employers, and on those occasions the truck was not left with him. On occasions Gibbs was allowed to keep the truck at his home over the weekend.

Of the three trucks operated by the Lelands, Gibbs was authorized from time to time to drive them all, but he regularly drove the Chevrolet which was involved in the accident. That truck was a two axle truck with double rear wheels. It could be operated with four wheels, but in the normal course of operation, and without exception so far as the record shows, it was operated with six wheels.

The Leland farms employed only some five regular hands, but at times —such as setting crops or gathering crops—other workers would be hired. It was customary for those workers who wanted the additional jobs at setting time or harvest time to wait on the road in the early morning for Gibbs to come by on his way to the farm. Gibbs would pick them up as a matter of course and take them with him to the Leland farm where they would be hired if needed by the Lelands. Gibbs worked regularly, and he was paid weekly for the days he had worked. If he worked less than a week, he was paid for only for the number of days that he actually worked. The additional laborers employed at times were, presumably, employed by the day.

During this cabbage setting season the Lelands employed a work force of approximately twenty-five to thirty workers. Only a portion of these would wait for the coming of the truck on the road for transportation to the farms. Whether all of these workers were employed every time they reported is not apparent from the record. Some regular workers were transported to work on the truck, depending on the fields to be worked that day, but the Lelands maintained that they did not consider anyone on the job until they had reported for work and had received assignments. The transportation of the laborers was admittedly to the benefit of the Lelands. The Lelands considered that the bringing of the farmhands to work was on their business. According to Aaron W. Leland the truck was not assigned to Gibbs. The principal duty of Gibbs, as his employer considered it, was to drive tractors for production and not, simply, to transport the workers. The transportation duties were on occasion taken by Mr. Aaron Leland himself.

## CONCLUSIONS OF LAW

█ To the contention of the insurer that the six-wheeled truck involved in the collision does not come within the policy coverage of an "automobile" as a four-wheel land motor vehicle designated for use principally upon public roads," it must be said that the courts have ruled in favor of a reasonable interpretation of what is an automobile. "Whether a particular vehicle is an 'automobile' or 'car' for the purposes of automobile liability policy, the courts have applied such general principles of construction as the rule that the terms of the policy are to be given their ordinary and usual meaning; and therefore the words 'automobile' or 'car' should be interpreted as they are popularly understood. In some instances, the term 'automobiles' has, for liability insurance purposes, been held equivalent to 'motor vehicles' and trucks and tractors have therefore been held to be 'automobiles'." 7 Am.Jur.2d, Automobile Insurance, § 99 (1963). In this case the original policy was issued on a pickup truck owned by the named insured. In Continental Cas. Co. v. Buckeye Union Cas. Co., Ohio Com.Pl., 143 N.E.2d 169, 75 Ohio Law Abst. 79, a stake body truck was held within the coverage of "any other automobile" and a "private passenger automobile." Kirk v. Nationwide Ins. Co., 254 N.C. 651, 119 S.E.2d 645 (1961), held a two-and-a-half-ton maintenance

truck was within "automobile" coverage. "Defining the word 'automobile' is not as simple as might appear on first blush," was the expression of the court in Brown v. Security Fire & Indemnity Co., 244 F.Supp. 299 (W.D.Va.1965), holding a logging rig to be an "automobile." Manifestly, the coverage of "automobiles" is designed to exclude vehicles of other types and of inherently different risks than general transport vehicles such as motorcycles, golf carts, tractors, or treaded vehicles. See, e. g., Combined American Ins. Co. v. Ganzer, 350 S.W.2d 211 (Tex.Civ.App.), Hardware Mut. & Cas. Co. v. Curry, 21 Ill.App.2d 343, 157 N.E. 2d 793. Seaford v. Nationwide Mut. Ins. Co., 253 N.C. 719, 117 S.E.2d 733, 85 A.L.R.2d 496 (1961). Under this functional view of what is an "automobile" under the terms of the policy, the fact that the vehicle involved had six wheels on two axles, rather than the four-wheel truck on which the policy was written, cannot alone be controlling under the law of insurance. See Voelker v. Travelers Indemnity Co., 260 F.2d 275 (7th Cir. 1958). The court so finds that coverage cannot be defeated on this ground.

The second contention of the insurer is that the truck was excluded from coverage as a non-owned vehicle "furnished or available for his regular use." The policy excludes vehicles "furnished or available for his regular use" in distinction from the predominant and most construed provision in these policies "furnished for regular use." The court finds no authority giving a significant distinction between "furnished" and "furnished or available" nor any practical distinction of substance in the context of this case. The provision "furnished for regular use" was treated by the Supreme Court of South Carolina in two very recent cases. The latest was Glisson v. State Farm Mut. Automobile Ins. Co., 246 S.C. 76, 142 S.E.2d 447 (1965). That case held that a minister was covered while using a National Guard jeep while on temporary active duty because the jeep was assigned to him only while he was performing duty as the Officer

of the Day, and that the jeep was not therefore furnished to him for his "regular use" within the exclusionary provision of the policy. In distinction to Glisson the Court held in Grantham v. United States Fidelity & Guaranty Co., 245 S.C. 144, 139 S.E.2d 744 (1964), that a county deputy sheriff was not covered under the provision because he was permitted to use the sheriff's car "on a full time basis" and "for personal purposes." See also Commercial Ins. Co. of Newark, N. J. v. Gardner, 233 F.Supp. 884 (D.S.C.1964), where this court ruled before the *Grantham* and *Glisson* decisions that a city policeman was not given "regular use" of a police department vehicle.

■ The purpose and effect of the regular use exclusion was stated in Aler v. Travelers Indemnity Co., 92 F.Supp. 620, 623 (D.Md.1950), to be:

> [T]o give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so. More specifically the evident intention of the limitation with respect to other automobiles is to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured.

That passage has been quoted with approval in Voelker v. Travelers Ins. Co., 260 F.2d 275 (7th Cir. 1958); Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co. v. Robertson, Robertson & Messer, 259 F.2d 389 (4th Cir. 1958); and Campbell v. Aetna Cas. & Surety Co., 211 F.2d 732 (4th Cir. 1954). To the same effect the South Carolina Court in Grantham v. United States Fidelity & Guaranty Co., 245 S.C. 144, 139 S.E.2d 744 (1964), stated:

> The purpose of such policy provisions is to afford coverage for the infre-

quent and casual use of vehicles other than the one described in the policy, but not to cover the insured with respect to his use of another vehicle which he frequently uses or has the opportunity to use. The intent is clear to protect the insurer from a situation whereby an insured could purchase a policy covering one automobile and be covered without qualification as to all automobiles available for his use.

In State Farm Mut. Automobile Ins. Co. v. Bates, 107 Ga.App. 449, 130 S.E.2d 514 (1963), where State Farm relied on *Voelker* as a principal authority, the court stated that their review of the cases showed general principles of law: "One is the idea that 'regular use' suggests a principal use as distinguished from a casual or incidental use."

■ State Farm Mut. Automobile Ins. Co. v. Smith, 206 Va. 280, 142 S.E.2d 562 (1965), held there was no regular use in circumstances similar to this case:

Elaine R. Mellow clearly had permission from the owner, Frost, to drive his automobile. But it is equally clear that to give 'permission' is different from to 'furnish'. The two words usually convey different thoughts, and the insurer obviously did not intend that they be regarded as synonymous * * *.

We interpret the language 'furnished to the name insured for regular use' as referring to the furnishing for the insured's own purposes, and not the furnishing for the owner's or his family's purposes, with incidental permission for use by the insured for her purposes. As was said by another court: 'It is unnecessary to hold that the words "regular use" as used in these policies referred to an exclusive use. But "regular use" reasonably suggests a principal use as distinguished from a casual or incidental use.' See Pacific Automobile Ins. Co. v. Lewis, 56 Cal. App.2d 597, 600, 132 P.2d 846, 848. *This interpretation appears most apt where, as in this case, the terms of the permission required, or were interpreted by the insured to require, further permission from the owner's wife on each occasion when the automobile was driven.* (Emphasis added).

Although Gibbs' use of the truck may have occurred frequently in this instance the conclusion must be that the Lelands did not furnish or make available to the insured the truck for his regular use. To the contrary, the evidence leads to the conclusion that the Lelands directed the use of the truck on a day to day basis for Gibbs' transportation to work and for their business purposes only. Nowhere does the record reflect that Gibbs ever had general and regular use of the truck. The same limitations on Gibbs' use of the truck obtained from day to day so long as the conditions of his employment remained the same. That this situation was a lasting one and that Gibbs frequently used the truck does not alter the arrangement between Gibbs and Leland. The use was casual from day to day and it was not for the regular use of Gibbs. Gibbs was not excluded by the "regular use" provision of the policy.

■ The conclusion that the truck was not a non-owned automobile available for the "regular use" of the insured and thus not excluded from coverage necessitates a further inquiry as to whether policy coverage is excluded by the exclusion of coverage to any non-owned automobile "while used on any other business or occupation." The truck was within the definition of a non-owned automobile: it was not available for Gibbs' "regular use." It was therefore covered if it was not excluded.

When the case was submitted counsel for both parties were in agreement that the critical issue in the case was whether the truck had been made available for Gibbs' regular use. The court must also conclude that the truck was not being used in his "business or occupation" at the time of the accident within the meaning of the contract.

The evidence shows that the Lelands did not consider the laborers who were coming to the farm on the truck to be employed until they had reported and were hired and given assignments. This was true also for Gibbs although the transportation of laborers was of benefit to the employers for Gibbs himself was not paid unless he produced a day's work in the fields. To be sure, the concern here is with the named insured on this particular trip. If neither Gibbs nor the others reported for work on this day they would not be in the paid employ of the Lelands.

Gibbs' use of the truck was for the greatest part of the year more for his own convenience than that of his employer's: there was no pick-up of part-time laborers. Even during the peak times of the season the use of the truck, as the court has concluded, was casual, and he was not compensated for this activity. The use was not within the scope of his employment. See Taylor v. State Farm Mut. Automobile Ins. Co., 171 So.2d 816 (La.App.). It was, so far as Gibbs himself was concerned, a gratuitously given permission to drive the truck. See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Harris, 279 Ala. 326, 184 So.2d 837. It was, therefore, not an activity in the pursuit of his business or profession, and coverage was not excluded.

■ As to the insurer's objection as to the giving of notice, the court concludes the provision was complied with. Counsel conceded that no prejudice was worked on the plaintiff by the manner of the insured's giving of notice. It is unnecessary, therefore, to proceed further with this contention. E. g., Squires v. National Grange Mutual Ins. Co., 247 S.C. 58, 145 S.E.2d 673 (1965).

It is therefore the conclusion of this court that the policy provided coverage over the accident and that the plaintiff is bound to defend the insured in suits arising out of the accident and to respond to judgments which the insured may suffer according to the terms of the policy and in accord with this order.

And it is so ordered.