Howard L. JONES, Plaintiff,

v.

GLOBE INDEMNITY CO. et al.,
Defendants.

Civ. S–685.

United States District Court
E. D. California.

Oct. 9, 1969.

Jack Halpin, Redding, Cal., for plaintiff.

Charles C. Dawson, Jr., Rich, Fuidge, Dawson, Marsh & Morris, Marysville, Cal., for Globe.

William A. Wilson, Hardy, Erich & Brown, Sacramento, Cal., for State Farm.

## MEMORANDUM AND ORDER

MacBRIDE, Chief Judge.

This is a diversity action brought by plaintiff as third party beneficiary under policies of insurance issued by the defendants, Globe Indemnity Company (Globe) and State Farm Mutual Insurance Company (State Farm), to W. S. Price, Jr. The action was originally brought in state court but removed here by Globe under 28 U.S.C.A. § 1441. At the pre-trial conference the parties agreed to submit the matter under a stipulated set of facts.

On October 13, 1966, the plaintiff and a Milton Purdom were involved in a two vehicle accident on State Highway A-5 (also known as U. S. 99 North) about one mile north of Project City in Shasta County, California. At the time of the accident Purdom was driving his own pickup truck on his way to work where he was employed by Price. Plaintiff, who was driving his own automobile, filed an action in state court, and by stipulation, a judgment was entered against Purdom and Price for $100,000 plus 7% interest from February 1, 1968. The parties herein stipulate that at the time of the accident Purdom was acting in the course and scope of his employment to Price.

Plaintiff has collected $10,000 on his judgment from Purdom's insurer. The purpose of this action is to recover the remainder from Price's insurers, each of which issued a policy with a limit of $100,000 for injuries to one person. State Farm's policy is an automobile policy primarily covering Price's leased pickup truck. Globe's policy is a manufacturer's and contractor's liability policy covering the premises and operations of Price's logging business.

This lawsuit can best be described as a free-for-all with each defendant not only denying its own liability but at the same time vigorously asserting the liability of the other. The issue to be decided is whether either or both of these policies

provided coverage to Price for his liability resulting from this accident.[1]

### The Globe Policy

At the time of the accident Purdom was carrying a radiator or radiator part in the back of his pickup. This belonged to one of Price's tractors at the logging site. On Price's instructions Purdom had previously taken it to be fixed (in Purdom's truck), and on the morning of the accident he was returning the repaired piece to the work site, again on instructions from Price. It was this errand which led to the liability of Price under the doctrine of respondeat superior.

The pertinent portions of the Globe policy read as follows:

I. Coverage A—Bodily Injury Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.

\* \* \* \* \* \*

## DEFINITION OF HAZARDS

Division 1—Premises—Operations

The ownership, maintenance or use of premises, and all operations.

\* \* \* \* \* \*

## EXCLUSIONS

This policy does not apply:

(a) under division 1 of the Definition of Hazards, and under coverage C, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from premises owned by, rented to or controlled by the named insured, except insofar as this part of this exclusion

is stated in the declaration to be inapplicable, (2) automobiles if the accident occurs away from such premises or the ways immediately adjoining, or (3) aircraft \* \* \*

Globe does not argue that the policy provides no coverage for automobile accidents. The language of the exclusion clearly implies that it does provide coverage for automobiles[2] if the accident occurs on the premises or the ways immediately adjoining. Under the definition of hazards the accident would also have to be a result of operations or the ownership, maintenance or use of the premises. The insured's liability arose from the fact that his employee, who caused the accident, was acting in the course and scope of his employment. The employee was on an errand involving maintenance of machinery used in operations. It therefore follows that the liability was the result of an accident "arising out of [operations]." (See Coverage A and Definition of Hazards.)

Globe argues that since the accident occurred about 35 miles from the insured's logging operation, the exclusionary clause makes the policy inapplicable to this accident. To apply the exclusionary clause one must first determine the extent of the insured "premises." Price had no permanent place where his logging operations were carried out. His business consisted of moving from job site to job site cutting, bucking and loading timber in various timber stands in Shasta and other adjacent Northern California counties. The logging site at the time of the accident was on private property adjacent to Dog Creek Road. To get from the logging site to the accident scene one proceeds along an unpaved portion of Dog Creek Road approximately eight miles; then approximately one mile on paved road to Vollmers and the intersection of U. S. 99; then about 24 miles

---

1. It is agreed that under the rule of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the law of California is the substantive law to be applied in this case.

2. No distinction is made between owned or non-owned automobiles.

on U. S. 99 to where the accident took place, about one mile north of Project City.[3] Because part of the logging operation involved the watering of the unpaved portion of Dog Creek Road, Globe concedes that the premises could conceivably extend along that stretch. Globe also apparently concedes that "ways immediately adjoining" could include the rest of Dog Creek Road to the U. S. 99 intersection. But that, Globe argués, still places the accident over 20 miles from the premises or the ways immediately adjoining, and thus outside the ambit of the policy.

A common-sense reading of the policy's language supports this position. Plaintiff and State Farm advance several reasons why the exclusion should not be applied. Both argue that it is fatally ambiguous, and State Farm argues that its application would offend California's public policy. The ambiguity arises from the fact that the space left in the policy to provide for a description of the insured premises had been left blank. This was apparently done because of the nomadic nature of Price's business as previously described.

 There are of course the cardinal rules of insurance contract construction that exceptions and exclusions are construed strictly against the insurer and liberally in favor of the insured and that ambiguities in language must be resolved against the insurer. *E. g.*, Arenson v. National Automobile & Casualty Insurance Co., 45 Cal.2d 81, 83, 286 P.2d 816 (1955). But this does not mean that if any ambiguity is found the insurer automatically loses or the exclusion does not apply. In General Casualty Co. of America v. Azteca Films, Inc., 278 F.2d 161 (9th Cir. 1960), a diversity case applying California substantive law, the Ninth Circuit Court of Appeals has outlined some general principles of construction helpful in this case:

> The test to be applied by the court in determining whether there is an ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. [citations] In other words, the criterion is ambiguity from the standpoint of a layman, not from that of a lawyer. Where it is possible to adopt a construction which is favorable to the insured without doing violence to the policy wording that construction will be preferred. This anticipates a reasonable interpretation of the language and can apply only so far as the fair application of the ordinary meaning of language permits. But this rule of strict construction against the insurer cannot apply unless there is some reasonable basis for doubt. (278 F.2d at 167–168)

> All rules of construction are subordinate to the leading principle that the intention of the parties, to be collected from the entire instrument, must prevail, unless inconsistent with some rule of law. (278 F.2d at 167)

Applying these rules to the instant exclusionary clause, I conclude that it does exclude this accident from coverage under the policy.

 It is clear to me that the parties intended the premises to be the existent site of logging operations, and that Price's itinerant operations prevented any precise definition of premises in the policy. State Farm argues that since the policy does not describe any precise premises, the premises must be deemed to be anywhere in Shasta County in the general geographic area within which Price conducted his successive operations. Any accident, it argues, arising from operations and occurring in the general vicinity should be covered. However, applying the tests set out above, I cannot reasonably conclude that there was an ambiguity such that "premises" covered the entire county. To use the words of the Ninth Circuit, "a reasonably prudent person applying for insurance" would

---

3. There are some minor discrepancies as to these distances in the several memoranda and stipulated facts, but I do not consider them important in the outcome of the case.

have understood premises, in the absence of precise description, to mean the present site of logging operations.

The same test convinces me that "ways immediately adjoining" cannot include the stretch of highway where the accident occurred, which was more than 20 miles from the "premises." State Farm argues that Pacific Employers Insurance Co. v. Maryland Casualty Co., 65 Cal.2d 318, 54 Cal.Rptr. 385, 419 P.2d 641 (1966), stands for the proposition that the words "ways immediately adjoining" in an insurance policy are ambiguous as a matter of law. I do not read the case to stand for any such thing. California Vehicle Code, § 16451 provides *inter alia* that an owner's policy of automobile liability insurance may not restrict the territorial limits of the policy within the continental United States.[4] *Pacific Employers* held that a policy which provided coverage for an *owned* vehicle on "ways immediately adjoining" could not restrict that coverage within the continental United States without offending the state's public policy evidenced by the statute. If the automobile in this accident had been owned by Price, I have no doubt that *Pacific Employers* would compel a finding that the policy covered the accident. But I do not read the case to hold anything about "ways immediately adjoining" used in another context.

There are apparently no California cases construing "ways immediately adjoining", but Globe has cited several New York cases holding no coverage for accidents occurring in very close proximity to the insured premises. *See* Blumin v. St. Paul, 18 Misc.2d 754, 188 N.Y.S.2d 836; General Accident Fire & Life Assurance Corp. v. Woeffel, 7 Misc.2d 952, 161 N.Y.S.2d 794. The accident with which we are concerned occurred at least 20 miles from the insured premises.

■ State Farm makes the further argument that applying the Globe policy's territorial exclusion would be against California's public policy. There are admittedly no cases directly in point, but State Farm would have me extrapolate from the principles of three California cases,[5] each of which was rooted in a statute proscribing limitations on the kind of coverage involved. On the authority of the applicable statutes, those cases struck down territorial exclusions in the policies in question. In order to void Globe's territorial exclusion under this theory, I would have to find that it was against California's public policy for an insurer to limit coverage territorially for a non-owned automobile, not operated by the insured. In the absence of an applicable California statute or case, I am powerless to extend California's public policy.

■ I am aware of no California statute setting minimum standards for the coverage plaintiff seeks—a non-owned vehicle not operated by the insured. The only arguably applicable statute is California Vehicle Code, § 16452 (1959):[6]

4. Cal.Veh.Code, § 16452, makes identical requirements for operators' policies.

5. Pacific Employers Insurance Co. v. Maryland Casualty Co., *supra* (exclusion in owner's liability policy); Mission Insurance Co. v. Brown, 63 Cal.2d 508, 47 Cal.Rptr. 363, 407 P.2d 275 (1965) (exclusion in uninsured motorist coverage); Herzog v. National American Insurance Co., 274 A.C.A. 780, 79 Cal. Rptr. 273 (1969) (exclusion in homeowner's liability policy applicable to the operator of a motor vehicle). It is my understanding that the California Supreme Court has granted a hearing in *Herzog*, making the opinion and decision of the Court of Appeals a nullity. See

3 Witkin, California Procedure 2416–17 (1954) [citing cases]. Since that opinion is not crucial to my decision, I need not decide the extent to which a federal judge, sitting in a diversity case, may consider an opinion of the Court of Appeals when the Supreme Court has granted a hearing but not rendered a decision in the case.

6. The statute was amended in 1968, but the law in effect at the time of issuance of a policy governs the rights of the parties thereunder. Interinsurance Exchange of Automobile Club of Southern California v. Ohio Cas. Ins. Co., 58 Cal.2d 142, 148, 23 Cal.Rptr. 592, 373 P.2d 640 (1962). The amendment add-

An *operator's* policy of liability insurance shall insure the *person named as insured* therein against loss from the liability imposed on him by law for damages arising out of the *use by him* of any motor vehicle now owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance. [emphasis added]

I think the language of the statute applies only to coverage of the named insured when he is operating a vehicle and not when he is "using" a vehicle through some agency relationship. Thus, the statute does not apply to the facts of the instant case.

Perhaps such minimum territorial coverage should be extended to all vehicle insurance in California. If so, it is a matter for the legislature to decide, not a federal judge sitting in a diversity case. Since there is no precisely applicable statute or case, my hands are tied. So, having applied the requisite standards of construction, I conclude that the Globe policy does not provide coverage for this judgment.

### The State Farm Policy

At the time of the accident Price carried a State Farm automobile liability policy on a pickup which he leased. He used this for business and pleasure, but the pickup in the accident was owned by Purdom, the driver. The State Farm policy did provide some coverage for non-owned automobiles, and it is on this basis that plaintiff seeks to recover from State Farm.

The pertinent portions of the State Farm policy read as follows:

### INSURING AGREEMENTS I—THE OWNED AUTOMOBILE

Coverages A and B—(A) Bodily Injury Liability and

(b) Property Damage Liability.

ed the words "motor vehicle" to make the statute apply to "an operator's policy of motor vehicle liability insurance

(1) To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons * * * caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned automobile; * * *

\* \* \* \* \* \*

### INSURING AGREEMENT II— NON-OWNED AUTOMOBILES

If the named insured is a person or persons and if during the policy period such named insured owns an automobile covered by this policy and classified as 'pleasure and business' such insurance as is afforded by this policy with respect to the owned automobile under:

(1) coverages A and B applies to the use of a non-owned automobile by:

(a) the first person named in the declarations or,

(b) if residents of the same household, his spouse or the relatives of either, and

(c) any other person or organization legally responsible for the use by such named insured, spouse or relative of an automobile not owned or hired by such other person or organization;

\* \* \* \* \* \*

### DEFINITIONS—INSURING AGREEMENTS I AND II

\* \* \* \* \* \*

Non-Owned Automobile—means an automobile or trailer not

(i) owned by,

(ii) registered in the name of, or

(iii) furnished or available for the frequent or regular use of the named insured, his spouse, or any relative of either residing in the same household,

\* \* \*." Cal.Veh.Code § 16452 (West Supp.1968)

other than a temporary substitute automobile.

## EXCLUSIONS—INSURING AGREEMENTS I AND II

This insurance does not apply under:

\* \* \* \* \* \*

(b) Insuring Agreement II under any of the coverages to a non-owned automobile

(1) while maintained or used by any person while such person is employed or otherwise engaged in an automobile business of the insured or of any other person or organization, or

(2) while used in any other business or occupation, except a private passenger automobile operated or occupied by the first person named in the declarations or, if residents of the same household, his spouse or any relative of either; \* \* \*

Under Insuring Agreement II coverage applies to "the use of a non-owned automobile by [Price]." Although Purdom, the employee, was driving the pickup at the time of the accident, both the plaintiff and Globe assert that Price, as employer, was "using" the vehicle at the time. State Farm denies that the "use" applies to this situation. Concededly, I must find against State Farm on this point for the State Farm policy to cover this accident. It is a close question, but I need not decide it. I assume, without deciding, that Price *was* using the vehicle in the sense described by the policy so that it provides primary coverage. I now move to the question of the exclusion.

■ State Farm asserts that the exclusion (quoted *supra*) applicable to non-owned automobiles used in any business or occupation, except a private passenger automobile operated or occupied by the insured or relatives living with him, clearly encompasses this situation and absolves them of liability. I agree.

■■ Globe and plaintiff have striven mightily to find ambiguities in this language to use against State Farm. They especially point to the phrase "other business or occupation" in the second clause, claiming that it could or must mean other business than that of the insured and that therefore the business of the insured is not excluded. I think it crystal clear that "other business" refers to other business than the automobile business which is covered by clause (1), and therefore the insured's own business *was* intended to be excluded from coverage under Insuring Agreement II.[7] But if this is true, argues Globe, why have two separate clauses when all businesses could as easily be lumped into one? The answer to this is that the two-clause construction facilitates explanation of the exception for non-owned passenger vehicles driven by the insured or his family which exception does not apply to non-owned vehicles of any kind used in the automobile business.

Globe has cited cases claimed to support its further position that Price's "use" of Purdom's vehicle was not in a business or occupation within the exclusion. Most of these can be distinguished on the ground that the policies in question were *owner's* policies which excluded coverage for non-owned automobiles used in any business or occupation *of the insured.* The crucial issue was whether the driver was engaged in *his* business or occupation rather than *any* business or occupation as is the case in the instant exclusionary clause. Thus, for instance, in Hartford Accident and Indemnity Co. v. Larges, 232 Cal.App.2d 631, 43 Cal.Rptr. 44 (1965), where a bartender was driving himself and his fellow employees home from a catering job in his employer's truck, the court held that he (trying to obtain coverage under *his* owner's policy) was not engaged in *his* business or occupation at the time and that therefore the exclusion was inapplicable. Had the court also considered whether he was using

7. *See* Seaboard Fire & Marine Insurance Co. v. Gibbs, 265 F.Supp. 623 (D.S.C.1967).

the truck in *employer's* business, the case might be relevant here, but it did not. Similarly, in Helmich v. Northwestern Mutual Insurance Company, 376 F.2d 420 (7th Cir. 1967), the question was whether a student transporting a non-owned car for hire as an incidental venture was protected under his father's owner's policy which excluded coverage to non-owned automobiles used in the business or occupation *of the insured.* The court held that the student, standing in his father's shoes, was not engaged in his business or occupation and that the exclusion was inapplicable. But once again in our case the question is not whether the driver was engaged in *his* business or occupation because it is not the driver's policy that is being construed and because I have already concluded that Price's policy excludes any business and not just his own.

Apparently in light of such unfavorable results as the above, the insurance companies changed their policies to exclude *any* business or occupation rather than just those of the insured. Another case cited by Globe, Seaboard Fire & Marine Insurance Co. v. Gibbs, 265 F. Supp. 623 (D.S.C.1967), decided after *Larges* and *Helmich,* more closely parallels the facts in this case. However, there is a crucial distinguishing factor which makes it inapplicable as precedent under the facts of the instant case. In that case, Gibbs was driving his employer's pickup to work and transporting fellow-farmhands when an accident occurred. The insurance company sought a declaration that its policy issued to Gibbs, which had an exclusion clause similar to Price's, did not provide coverage. At issue was whether he was using the non-owned truck in his business or occupation at the time of the accident. The court held that the use was "casual" and not in the pursuit of a business or occupation.[8] However, in

reaching this conclusion the court indicated that

> *The use was not within the scope of his employment.* [citation] It was, so far as Gibbs himself was concerned, a gratuitously given permission to drive the truck. [citation] It was, therefore, not an activity in the pursuit of his business or profession, and coverage was not excluded. [emphasis added] (265 F.Supp. at 630)

It is of course a stipulated fact in this case that at the time of the accident Purdom was acting in the scope of his employment. This is a crucial distinction. The *Seaboard* case cannot, therefore, be used to support a finding that Purdom's pickup was not being used in a business.

Two further considerations support a finding that the exclusion applies. Measuring again by the tests provided in *General Casualty, supra,* it is unreasonable to suppose that upon issuance of this policy covering Price's vehicle, either of the parties contemplated coverage extending to every employee of Price driving any of Price's business vehicles or driving any vehicle on his behalf anywhere in the country. *Compare* Voelker v. Traveler's Indemnity Company, 260 F.2d 275 (7th Cir. 1958). That would be the result of plaintiff's suggested construction. In addition, it would be inconsistent in the extreme to hold Price liable for damages solely by reason of his status as employer, and on the other hand hold (as Globe would have me do) that the vehicle involved was not being used in his business at the time of the accident. I therefore find that the State Farm exclusion is applicable and that State Farm's policy does not provide coverage for this judgment.

I cannot conclude without remarking that it is a bizarre result indeed when a man with two insurance policies, one cov-

---

8. In deciding the question the court talked about whether Gibbs was engaging in *his* business or occupation. If this characterization is accepted, the case is open to the same criticism as precedent as *Larges* and *Helmich, supra.* However, I think because of the policy's wording and the reasoning of the court, the case can fairly be read to hold that Gibbs was engaging in no business or occupation at the time of the accident.

ering his automobile and the other covering his liability for business operations, is told that he has no coverage for a liability which was the product of both an automobile accident and his role as employer. Such are the infinite complexities of human interaction that it seems the unexpected is most likely to occur. Or as someone more aptly put it, "If it is possible for something to go wrong, it will!"

I can only add that insurance to protect against the risk involved here is readily available, and it is unfortunate that Mr. Price, who obviously tried to insure himself, is subjected to liability in so large a sum for almost the only conceivable accident not covered by his policies. However, a court should not "indulge in a forced construction so as to fasten a liability on [an] insurance company which it has not assumed." Pacific Employers Ins. Co. v. Maryland Casualty Co., 65 Cal.2d 318, 323, 54 Cal. Rptr. 385, 387, 419 P.2d 641, 644 (1966). If I were to find for the plaintiff in this case, I would be doing just that.

It is therefore ordered that the respective defendants prepare and submit judgments consistent with this opinion.