EVERETT PICKENS, APPELLANT, v. MARYLAND CASUALTY COMPANY, APPELLEE.

2 N. W. (2d) 593

FILED FEBRUARY 27, 1942. No. 31298.

106

*Lloyd E. Peterson* and *John L. Mattox,* for appellant.

*Herbert E. Story* and *John H. Roper, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

Plaintiff sues to recover a judgment against the Maryland Casualty Company for the sum of $2,160 to reimburse plaintiff for $2,000 attorney's fees and $160 expenses incurred by him in the defense of a personal injury action, an obligation which plaintiff alleges the defendant company assumed by the issuance of a public liability policy to the plaintiff. The trial court found for the defendant and plaintiff appeals.

The record shows that on September 2, 1938, one Frank Krejci, while operating a truck one-half mile north of the city of Plattsmouth, became involved in an accident with an automobile driven by one George Moore. An action was commenced by Moore against plaintiff and Krejci to recover damages for the resulting injuries. It appears that Krejci had hauled a load of rock from plaintiff's quarry to

Ft. Crook, and on his return trip had met with the accident with the Moore car. The quarry was seven miles south and a mile and a half east of the scene of the accident. The evidence shows that the rock was being hauled by Krejci as an independent contractor in a truck owned by his wife and used with her consent. On April 4, 1939, Moore filed his action against plaintiff and Krejci and on May 29, 1939, plaintiff notified defendant that he was tendering the defense of the case to it under the terms of the public liability policy he held with the defendant company. On June 19, 1939, the defendant company refused to assume the defense of the case on plaintiff's behalf for the reason that it involved no liability within the terms of the policy. Plaintiff then employed counsel, who successfully defended his case, and he now seeks to recover from the defendant the attorney's fees and expenses necessarily expended in the defense of the case.

The general insuring agreements of the policy provide in part as follows: "This policy does not cover: * * * (5) any accident caused directly or indirectly by any automobile vehicle or by any draught or driving animal or other vehicle owned or used by the assured or by any employee of the assured in charge of any such vehicle or animal, unless such accident shall occur upon premises owned by or under the control of the assured, or on the public ways immediately adjacent thereto and provided such premises are specifically described in Item III (a) of the schedule hereof;" Item III (a), referred to in the foregoing provision, is as follows: "The operation and locations covered,—data relative to and analysis of premium,— and special conditions, stipulations, exceptions and limits of liability governing the insurance under this policy,—are as follows: Schedule (a) Location of Operations: Near Plattsmouth, Nebraska."

A proper interpretation of the applicable provisions of the policy necessarily requires an understanding of the meaning of the words "upon premises owned by or under the control of the assured, or on the public ways imme-

diately adjacent thereto." Clearly, the accident which was the source of this litigation did not occur upon the premises owned by or under the control of the assured. It took place more than eight miles from the place of defendant's quarrying business on a public highway completely disconnected from plaintiff's place of work. *National Optical Co. v. United States Fidelity & Guaranty Co.*, 77 Colo. 130, 235 Pac. 343. But it is urged that it was on a public way at a point immediately adjacent to premises owned by or under the control of the assured.

The word "adjacent" ordinarily means "lying near, close or contiguous." Webster's New International Dictionary. It does not always import a physical contact with something else, as does the word "adjoining." "But, when qualified by the adverb 'immediately,' it necessarily means 'contiguous' or so close to the other object as to be almost in contact with it." *City of Lawrenceburg v. Maryland Casualty Co.*, 16 Tenn. App. 238, 64 S. W. (2d) 69. And in discussing the use of the words "immediately adjacent," the court in *Long v. London & Lancashire Indemnity Co.*, 119 Fed. (2d) 628, said:

"We think the words 'immediately adjacent,' as used in the insurance policy under construction, have the same natural significance as the words 'immediately adjoining.' Unless such construction be adopted, the word 'immediately' in the present context would have no practical effect. Its express use must not be disregarded. If the insurance company had intended to cover an accident on ways adjacent to the insured premises, there would have been no occasion for using the qualifying word 'immediately' in conjunction with the word 'adjacent.' But, inasmuch as the word 'adjacent' has been actually qualified by the word 'immediately,' the two words used conjunctively must receive a reasonable interpretation. If policy coverage had been intended despite intervening space, the insurer would have used some such expression as 'closely adjacent,' or 'nearly adjacent.' * * *

"As above stated, the words 'immediately adjacent' in

the present context are, in our opinion, synonymous with the words 'immediately adjoining.' The *locus quo* of the accident was not on a way immediately adjacent to the premises of the assured. There was, therefore, no policy coverage."

We conclude that the accident which occurred more than eight miles from plaintiff's quarrying business did not take place on a public way immediately adjacent to premises owned by or under the control of the assured.

Plaintiff contends, however, that the provisions of Item III (a) of the policy hereinbefore quoted, and adopted by reference as a part of the general insuring agreement just discussed, changes the meaning so that liability exists if the accident happened on a public way immediately adjacent to the city of Plattsmouth. The most that can be said is that the policy protected plaintiff against damages for accidents occurring upon premises owned by or under the control of the assured, or on the public ways adjacent thereto, which said premises are located near Plattsmouth, Nebraska. For us to say that the words "near Plattsmouth, Nebraska," when used as descriptive of the location of operations, amounted to an enlargement of the insurance risk specifically limited in the general insuring agreements of the policy would require us to deviate from ordinary usage of common words and give to them a meaning clearly not intended by the parties. The policy herein involved is known as a contractors' public liability policy. The coverage is limited, in so far as accidents caused by automobile vehicles are concerned, to the operating premises, or the public ways immediately adjacent thereto. By showing the location of the quarry operations to be "near Plattsmouth, Nebraska," we cannot say that this has the effect of creating additional liability under the policy.

Plaintiff attempts to invoke the rule against defendant to the effect that, where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct upon another and different con-

sideration; that he will not be permitted to mend his hold.

The basis for this contention is that plaintiff notified defendant's agent of the commencement of the action and requested the insurer to conduct the defense. In replying to the letter, defendant denied that it was covered by the provisions of the policy and quoted the provision of the general insuring agreements hereinbefore set out, except that the reference to Item III (a) was inadvertently referred to as Item IV (a). The error was so patent that it can in no way prejudice the rights of defendant.

It is further contended that the placing of Item III (a) on the front page of the policy and including therein the words "near Plattsmouth, Nebraska," operated as an estoppel against the defendant setting up that part of the general insuring agreements pleaded as a defense. We are unable to agree with plaintiff on this point. Essential elements of an estoppel are absent. It is urged that, if plaintiff relied upon the apparent meaning of Item III (a) as it appeared on the front page of the policy and that if he had not been misled by it, he would have procured insurance which would have protected him in a case such as the one brought against him. In the first place, plaintiff knew that the front page of the policy did not constitute the whole contract. Certainly, he knew that Item III (a) did not constitute the insuring clause. The policy is couched in plain language and if plaintiff did not read it, it is his fault and not that of the defendant. A mere failure to read an insurance contract cannot become the basis for an estoppel *in pais*. The defendant did not induce plaintiff to change his position or to fail to do some act that he would have otherwise done. The record shows that a rider was obtained on October 16, 1937, which provided that all of plaintiff's operating locations were to be covered by the policy. This is evidence that plaintiff had knowledge of the restrictions in the policy, or he would not have requested the rider. If plaintiff relied only upon the first page of the policy he could not have been misled, for there is no automobile coverage shown on the first page. The only automobile cov-

erage in the policy is that shown in the quoted provision which plaintiff claims he did not know about. It does not appear that defendant did anything with intent to deceive, or that plaintiff was destitute of convenient means of acquiring knowledge of the true agreement, or that he relied upon it to his detriment. We are obliged to say that there are no facts established which would support an estoppel *in pais*. *Walker v. Ehresman*, 79 Neb. 775, 113 N. W. 218; *State v. Burrows*, 136 Neb. 691, 287 N. W. 178.

Plaintiff claims that there is an ambiguity in the policy. We think the language is plain and that no ambiguity exists. The courts will not read an ambiguity into plain language in order to construe it against the one who prepared the contract.

Plaintiff also claims that he is entitled to recover in this action under a clause in the general insuring agreements, by which defendant agreed to defend in the name of the assured any suit for personal injuries filed against him "although such suits, proceedings, allegations and demands may be wholly groundless, false or fraudulent." Clauses of this nature have been generally construed to obligate the insurer to defend suits, even though groundless, false or fraudulent, upon those claims only for which it has assumed liability under the policy. *Brodek v. Indemnity Ins. Co.*, 292 Ill. App. 363, 11 N. E. (2d) 228; *Lumbermen's Mutual Casualty Co. v. McCarthy*, 90 N. H. 320, 8 Atl. (2d) 750; *United Waste Mfg. Co. v. Maryland Casualty Co.*, 85 Misc. 539, 148 N. Y. Supp. 852, affirmed in 169 App. Div. 906, 153 N. Y. Supp. 1148. As the accident out of which this litigation arose was not covered by the policy, defendant was under no obligation to defend.

The interpretation placed upon the insurance contract by the trial court was correct and the judgment for the defendant is affirmed.

AFFIRMED.