**FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Wendell I. SANDBULTE, Kenneth Sandbulte, Donna Vander Lugt, as Conservator of the Estate of Kenneth Ray Vander Lugt, Incompetent, and Donna Vander Lugt, Individually, Appellees.**

No. 64501.

Supreme Court of Iowa.

Feb. 18, 1981.

Rehearing Denied April 10, 1981.

H. R. Grigg of Smith, Grigg & Shea, Primghar, for appellant.

Michael R. Hellige and Gerald M. Kraai of Shull, Marshall & Marks, Sioux City, for appellee, Donna Vander Lugt.

Loren J. Veldhuizen of Klay, Bastemeyer & Veldhuizen, P.C., Orange City, for appellees, Wendell I. Sandbulte and Kenneth Sandbulte.

LARSON, Justice.

The appellant, Farm Bureau Mutual Insurance Company, sought a ruling in district court, through declaratory judgment proceedings, that it was not liable under a farm liability policy for damages arising out of a collision involving a pickup owned by its insured, Kenneth Sandbulte. Farm Bureau joined Sandbulte and his son, Wendell, as defendants, as well as Kenneth Ray Vander Lugt and Donna Vander Lugt, plaintiffs in a separate suit filed against the Sandbultes for damages arising out of the collision. Following trial to a jury, judgment was entered in favor of the defendants Sandbulte as to Farm Bureau's liability under the policy; it also entered judgment against Farm Bureau for $300,000, the amount of a consent judgment previously agreed to by the Sandbultes and the Vander Lugts. We conclude there was no policy coverage for this occurrence and therefore reverse the trial court.

The underlying facts are substantially without controversy. On April 22, 1976, Sandbulte farmed 760 acres in four separate tracts of 120 to 280 acres in size, and

spread across approximately nine miles in Sioux County. On that date his son, Wendell, drove a pickup approximately 8½ miles from the homeplace, the northernmost tract, to the southernmost tract and began to plow. He had problems with the tractor, left it in the field, and headed for the homeplace in the pickup to get another tractor. He failed to yield the right-of-way at an intersection approximately halfway home, and the pickup was struck by a motorcycle operated by Kenneth Vander Lugt, causing serious injuries to him.

Farm Bureau, which insured the pickup, tendered the maximum coverage under that policy to Vander Lugt. It also was the insurer under a farm liability policy, called Squire IV, owned by Kenneth Sandbulte and providing a maximum of $300,000 for bodily injury. The Squire IV excludes coverage for motor vehicles "while away from the insured premises or the ways immediately adjoining" and Farm Bureau contends this incident fell outside the policy coverage. In its general statement of coverage the policy provides:

COVERAGE M . . .

This Company agrees to pay all reasonable medical expenses . . . for each person who sustains bodily injury . . . .

2.  if such bodily injury
    (a) arises out of a condition in the insured premises or the *ways immediately adjoining* . . . .

(Emphasis added.) The emphasized language is also used in the policy's statement of exclusions:

This policy does not apply:

1.  Under Coverages L and M:
    a.  to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

    .      .      .      .      .

    (2) any motor vehicle owned or operated by . . . any insured while away from the insured premises or the ways immediately adjoining . . . .

"Insured premises" is defined as

the farm premises (including grounds and private approaches thereto) and the resi-

dence premises described in the Declarations of this policy . . . .

Sandbulte argues (1) that the site of the accident was on a "way immediately adjoining" its farm premises, thus entitling him to express policy coverage; if not expressly covered, he is still entitled to prevail, because this policy language was subject to different interpretations and, under our general rule, must be interpreted in the manner most favorable to the insured; (2) Farm Bureau impliedly warranted to him that he had coverage for this type of occurrence under his Squire IV policy; (3) coverage should be accorded under the principle of "reasonable expectations" and (4) in any event, this pickup was not a "motor vehicle" as that term is used in the policy. Farm Bureau asserts that interpretation of the "ways adjoining" language and "motor vehicle" definition in the policy were legal issues not binding upon this court on appeal. And, it argues, there was insufficient evidence for submission of Sandbulte's implied warranty and reasonable expectation theories to the jury.

*I.* The trial court submitted "special verdict" forms under which the jury was asked to respond whether "ways immediately adjoining" as used in the policy would to "[t]he ordinary person . . . [include] the location of the automobile accident in this case." The jury indicated in response that the area of this accident was on a "way adjoining" the insured premises. Farm Bureau argues that the interpretation of this language was for the court, that it erred in allowing the jury to decide the issue, and that a proper interpretation of the phrase excludes coverage under the policy. Sandbulte counters that it was a fact issue properly submissible to the jury and that the issue was properly decided by it.

■ "Construction" of a contract, the process of determining its legal effect, is always a matter of law to be resolved by the court. "Interpretation", the process of determining the meaning of words used, is also a matter for the court to decide as a matter of law, unless it depends upon ex-

trinsic evidence or a choice among reasonable inferences to be drawn from it. *Connie's Construction Co. v. Fireman's Fund Insurance Co.*, 227 N.W.2d 207, 210 (Iowa 1975); *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.*, 227 N.W.2d 169, 172 (Iowa 1975); *General Casualty Co. v. Hines*, 261 Iowa 738, 745, 156 N.W.2d 118, 122–23 (1968).

No extrinsic evidence bearing on the interpretation of the phrase "ways immediately adjoining" was submitted in the trial court. The insured, who was not even aware of the language used until after the accident, argued only that the phrase was susceptible to two meanings and that he was entitled to the one most favorable to him; the insurer argued only that the phrase was clear on its face. Because no extrinsic evidence was submitted, the issue should have been resolved by the court as a matter of law, based upon its examination of the words used. *Id.* Rather than follow that procedure, however, the court submitted the issue to the jury. While this procedure did not comport with that prescribed by our cases for interpretation of contract language in the absence of extrinsic evidence, the real issue is whether the phrase was interpreted correctly. Because this was an issue of law, of course, the trial court's interpretation is not binding on appeal, *Connie's Construction Co. v. Firemans Fund Insurance Co.*, 227 N.W.2d at 209, and we address that issue anew.

The insurance policy does not define the phrase in question. The words used, however, are commonly understood. "Adjoining" is defined as "touching or bounding at some point or on some line: near in space . . . ." *Webster's Third New International Dictionary* 27 (unabridged 1961); and "immediately" is defined as "without intermediary: in direct connection or relation . . . ." *Id.* at 1129. The combination of the words "immediately" with "adjoining," or "adjacent" has been held to be synonymous with actual contiguity, without any intervening space. *See Long v. London & Lancashire Indemnity Co.*, 119 F.2d 628, 630 (6th Cir. 1941); *Pickens v.*

*Maryland Casualty Co.*, 141 Neb. 105, 108, 2 N.W.2d 593, 595 (1942). Sandbulte, in arguing that the phrase is susceptible to two interpretations and, therefore, the one favorable to him must be accepted, relies upon a well-established rule. *See, e. g., State Farm Automobile Insurance Co. v. Malcolm*, 259 N.W.2d 833, 836 (Iowa 1977); *Central Bearings Co. v. Wolverine Insurance Co.*, 179 N.W.2d 443, 445 (Iowa 1970). However, the mere fact that parties disagree on the meaning of a phrase does not establish ambiguity for purposes of this rule. *See Travelers Indemnity Co. v. Bohn*, 460 S.W.2d 642, 645 (Mo.1970) (parties' conflicting interpretations of "ways immediately adjoining" does not establish ambiguity). The test is an objective one: Is the language *fairly* susceptible to two interpretations? *Central Bearings Co. v. Wolverine Insurance Co.*, 179 N.W.2d at 445. We conclude it is not.

The phrase "ways immediately adjoining" is found frequently in general liability and "homeowners" insurance policies. *See* 7A J. Appleman, *Insurance Law and Practice* § 4500.02, at 191 (1979); G. Couch, *Cyclopedia of Insurance Law* § 44:303, at 718–19 (1964). It is considered to be unambiguous. *See* Appleman, *supra* § 4500.02, at 191; 11 Couch, *supra* § 44:303, at 718. Although our court has apparently never decided the issue, those cases addressing it agree: the phrase "ways immediately adjoining" is clear, and that the "way" upon which the incident occurs must touch or abut the insured premises at the point of the occurrence. *See, e. g., United States v. Great American Indemnity Co.*, 214 F.2d 17, 19 (9th Cir. 1954) ("words 'immediately adjoining' are unequivocal and have a definite and certain meaning. 'Adjoining' used in its usual and ordinary sense means touching or contiguous, in contact with, as distinguished from lying near or adjacent."); *Long v. London & Lancashire Indemnity Co.*, 119 F.2d at 629–30; *Jones v. Globe Indemnity Co.*, 305 F.Supp. 242, 245 (E.D. Cal.1969); *Travelers Indemnity Co. v. Bohn*, 460 S.W.2d at 645–48; *Pickens v. Maryland Casualty Co.*, 141 Neb. at 108, 2 N.W.2d at

595 (1942); *Lendway v. Muse*, 83 N.J.Super. 256, 260–61, 199 A.2d 391, 392–93 (1964); *Carraco Oil Co. v. Mid-Continent Casualty Co.*, 484 P.2d 519 (Okl.1971); *Sam Finley, Inc. v. Standard Accident Insurance Co.*, 41 Tenn.App. 417, 295 S.W.2d 819 (1956); *Maryland Casualty Co. v. Texas Fireproof Storage Co.*, 69 S.W.2d 826 (Tex.Civ.App. 1934).

Accordingly, claims arising from motor vehicle accidents on ways not actually contiguous to or touching the insured premises have been uniformly held, as a matter of law, to be excluded from coverage under identical policy language. *See, e. g., Illinois Conference of United Church of Christ v. Fidelity & Casualty Company*, 10 Ill.App.3d 178, 294 N.E.2d 776 (1973) (highway accident on trip between separate parts of insured premises, one-half mile from nearest part of premises; coverage held excluded); *M.F.A. Insurance Co. v. Berry*, 511 S.W.2d 807 (Mo.1974) (accident on nearby street, but not at point contiguous to premises; coverage excluded); *Travelers Indemnity Co. v. Bohn*, 460 S.W.2d at 646 (accident on street 847 feet from premises; not covered; way immediately adjoins only if "nothing intervenes"); *Pickens v. Maryland Casualty Co.*, 141 Neb. at 108, 2 N.W.2d at 594–95 (accident on highway eight miles from premises not covered); *Lendway v. Muse*, 83 N.J.Super. 256, 199 A.2d 391 (1964) (accident in intersection; not covered in "homeowners" policy on adjacent corner lot); *General Accident Fire & Life Assurance Corp. v. Woeffel*, 7 Misc.2d 952, 161 N.Y. S.2d 794 (1957) (accident on street in front of adjacent lot; coverage excluded); *Connolly v. Standard Casualty Co.*, 76 S.D. 95, 73 N.W.2d 119 (1955) (accident on highway in proximity to insured farm premises but separated by railroad right-of-way held not "on ways immediately adjoining" premises).

The fact that Wendell Sandbulte was traveling between two separate tracts of the insured premises in connection with farm business does not change the result. If we were to hold that, in effect, the entire farming operation is a single, monolithic unit, so as to include the roadways between,

or to hold "insured premises" in such cases becomes coincident with scope of employment, the practical effect would be to make such a policy virtually open-ended in view of the extensive travel in modern farming practices. (Kenneth Sandbulte testified, for example, in regard to his reasonable expectations, that he should be covered under this policy for a cattle-buying trip to Montana because this would be in connection with his farming business.) Thus, where a collision occurred in traveling from one part of a farm premises to another, one court has stated:

> To hold that the policy covered all accidents caused by insured's automobiles while used in connection with the farm on all highways necessarily traveled in going from one part of the farm to another would give to it a meaning clearly not intended. If the policy had intended to include all such highways there was no occasion for using the qualifying word "immediately" in conjunction with the word "adjoining." Coverage under the policy we conclude extended to those portions of the public highways abutting or touching the farm premises.

*Connolly v. Standard Casualty Co.*, 76 S.D. at 98–99, 73 N.W.2d at 121 (citations omitted); *see also Illinois Conference of United Church of Christ v. Fidelity & Casualty Company of New York*, 10 Ill.App.3d at 178–79, 294 N.E.2d at 778 (insured premises consisted of separate tracts; accident on trips between them one-half mile from destination held not on "ways immediately adjoining" insured premises).

And the argument that work relationship of the accident extends the premises coverage has also been rejected. *Jones v. Globe Indemnity Co.*, 305 F.Supp. at 244–45 (accident on trip for repairs, 20 miles from nearest insured premises; court rejected argument that "ways immediately adjoining" premises was shifting concept depending upon situs of logging operations); *see Pickens v. Maryland Casualty Co.*, 141 Neb. at 108, 2 N.W.2d at 594–95 (accident over eight miles from quarry, while on company business; held not on "ways immediately adjacent to insured premises).

The site of the Sandbulte-Vander Lugt accident was on county road K42. Two of Sandbulte's tracts abutted that road, one three-fourths mile north of the accident site and the other four miles south. So in a broad sense, the "way" or road on which the accident occurred did adjoin the insured premises, although not at the point of impact. Does this fact mandate compensation because it complies with the policy's express provisions and, if so, where would such coverage end? Or if not, does it make the "ways immediately adjoining" language at least ambiguous under these circumstances, thus entitling the insured to the benefit of the doubt? Sandbulte argues that it does. *Travelers Indemnity Co. v. Bohn* addressed these issues and resolved them against coverage. In *Travelers Indemnity* the accident occurred on the same street on which the insured premises were located, but 847 feet away. The court said:

> The real contention of [the insureds] . . . is that there is coverage if the way adjoins [the insured] premises at any point. Counsel declined to argue, as being irrelevant, a hypothetical question of coverage of an accident two miles away or ten miles away on the same street, or 100 miles or more away on the same highway. They insist, however, that it is only the *way* which must adjoin, and *not* necessarily the place of the accident, that the *way* may not thus be separated into parts, and that the trial court distorted the terms of the policy exclusion when it did so. Counsel, somewhat obliquely, argue also the matter of ambiguity, saying that if the above meaning is not clear, then the policy provision is at least ambiguous and that a construction should be adopted favorable to the insured. We shall spend no time or space on that question or the authorities discussed, for we hold that the provisions are not ambiguous. In considering this provision we may and should consider the context and the whole policy in which this coverage and its exclusion appear.

460 S.W.2d at 645. Similar arguments were rejected in *Carraco Oil Co. v. Mid-Continent Casualty Co.*, 484 P.2d at 522.

The phrase "ways immediately adjoining", requiring contiguity with the insured premises, did not allow for coverage under the facts of this case, and the trial court erred in concluding it did.

■ *II.* Sandbultes contend Farm Bureau impliedly warranted to him that the Squire IV policy would cover this situation. Following the analogy of implied warranty in the sale of tangible goods, a plurality opinion of this court adopted the doctrine of implied warranty in the sale of an insurance policy in *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.*, 227 N.W.2d 169, 177–79 (Iowa 1975) (three justices joining). We expressly adopt that theory here, for the reasons expressed in the *C & J Fertilizer* opinion, but conclude it is inapplicable under the facts of this case.

The elements for recovery under the theory of implied warranty are (1) that the insurer had reason to know the particular purpose for which the policy is purchased; (2) that the insured relied upon the company's skill or judgment in furnishing such coverage; and (3) that the resulting implied warranty was breached. *See* § 554.2315, The Code 1977 (sale of goods). Whether or not such a warranty arises is usually a question of fact to be determined from the circumstances of the parties' negotiations. *See* 1 U.L.A. *Uniform Commercial Code* § 2–315, at 482–83, Official Comment (1976) (sale of goods). Farm Bureau contends, however, that the issue should not have been submitted to the jury, because there was no evidence in the record to establish the first element, *i. e.*, the insurer's reason to know the particular purpose for the coverage. A "particular purpose" in the sale of goods is illustrated:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For ex-

ample, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

*Id.* at 483.

■ To give rise to an implied warranty, the furnishing of the policy must respond to a particular need; furnishing it for general purposes is not enough. *Jacobson v. Benson Motors, Inc.*, 216 N.W.2d 396, 403–404 (Iowa 1974); 1 R. Anderson, *Uniform Commercial Code* § 2–315:14, at 662 (1970) ("a particular purpose . . . is a use to which the goods are not ordinarily put"); 77 C.J.S. *Sales* § 325, at 1178 (1952) (" 'particular purpose' means a usage other than, or different in kind or extent from, the ordinary uses the article was made to meet; a special purpose as distinguished from the ordinary use of the article in question"); *see generally Annot.*, 83 A.L.R.3d 669 (1978).

■ Reverting to the general law of sales, as we did in *C & J Fertilizer*, we note that, while it is no longer necessary for a buyer to show he advised the seller of the particular purpose in purchasing the goods, he must nevertheless show that the seller "had reason to know" of that purpose. *Jacobson v. Benson Motors*, 216 N.W.2d at 404; *compare* § 554.16(1), The Code 1962 (Uniform Sales Act; buyer must "expressly or by implication . . . [make] known to the seller the particular purpose for which the goods are required") *with* § 554.2315, The Code 1977 (U.C.C.; seller must have "reason to know any particular purpose for which the goods are required . . . .").

■ Sandbulte first bought a Farm Bureau liability policy, called a Farm Protector, in August, 1968. This form was discontinued by the company, and in 1974, when the old policy was up for renewal, it was automatically replaced by a Squire IV policy. The replacement policy was mailed from the company's home office directly to Sandbulte. The original Squire IV provided coverage of $100,000 for 280 acres, and contained an identical exclusion for occurrences off the premises or adjoining ways. In September, 1974, Sandbulte modified the first Squire IV by increasing his coverage to $300,000 and, learning that his previous coverage had not included 480 acres farmed by him for some time, he also had his policy modified to include all 760 acres.

The record in this case shows no communication between Sandbulte and the insurer or its agent as to the 1968 policy, which first contained the exclusion in question. There was a limited discussion between Sandbulte and the Farm Bureau agent in September, 1974, when Sandbulte upgraded the Squire IV policy by increasing the limits and adding the 480 acres. Kenneth Sandbulte's testimony about that conversation was the only evidence as to what the insurer "had reason to know" about his particular purpose in acquiring the coverage. Sandbulte testified that, when his first Squire policy was upgraded, "I was making sure that my whole farm operation would have $300,000 coverage" and the company's agent told me that "the Squire policy . . . would give me better total coverage for everything in my farming operation." He conceded that no specific representation had been made by the agent that motor vehicle coverage away from the insured premises was provided by the Squire IV.

■ We note, in passing, that the representations claimed to have been made by the agent were made after the last of the three liability policies had been purchased. The general rule is that warranty of fitness for a particular purpose rests upon what the seller has reason to know at the time of the sale, not thereafter. *Jacobson v. Benson Motors, Inc.*, 216 N.W.2d at 405; 67 Am.Jur.2d *Sales* § 468, at 638–39 (1973).

In any event, neither Sandbulte's inquiry nor the agent's reply were shown to be referable, even by inference, to a particular need to be met by the insurance, *i. e.*, off-premises coverage of motor vehicles. The agent's representation that the insured would be provided "better total coverage for everything in . . . [his] farming operation" and which would be available anytime an occurrence "pertained to my farm operation" does not amount to a particular pur-

pose envisioned by the law of implied warranty. If this generalized representation were held to be a basis for implied warranty of fitness for a particular purpose, there would be virtually no limits of exposure to liability. The farm liability policy would be merely a framework of coverage to be filled in as occurrences arose.

Some purchases signal a particular purpose just by the nature of the items purchased. *See, e. g., Dailey v. Holiday Distributing Corp.*, 260 Iowa 859, 871–72, 151 N.W.2d 477, 486 (1967) (only one purpose for buying dry cleaning equipment, a purpose "as obvious to [sellers] as to buyers"); 67 Am.Jur.2d *supra*, at 639 ("in some instances . . . the seller will have reason to know the purpose merely by the nature of the sales transaction itself"). *C & J Fertilizer* illustrates a single-purpose policy which, from its very nature, signals a particular purpose: It was to be a burglary policy; the policy definition of "burglary," however, emasculated its coverage of the very risk for which it was purchased. The purchase of a general farm liability policy, though, does not signal that kind of particularized purpose. Such policies customarily do not provide off-premises motor vehicle coverage, because such risks are separately insured under motor vehicle policies. 7A Appleman, *supra* § 4500.02, at 191; Couch, *supra* § 44:453 at 32.

Because there was no evidence of one of the requisites of the implied warranty theory, reason to know of the particular purpose, we conclude it was error to submit the issue to the jury.

*III.* The insured contends that even if he did not have express coverage under the policy terms, he should nevertheless be entitled to recover as if he did, because this was his reasonable expectation. We have recognized the reasonable expectation principle in similar cases, including *C & J Fertilizer,* 227 N.W.2d at 176–77 and *Rodman v. State Farm Mutual Automobile Insurance Co.,* 208 N.W.2d 903, 905–908 (Iowa 1973). The trial court here submitted the issue to the jury under instructions which explained the concept of reasonable expectations. Sand-

bulte claims on appeal there was sufficient evidence to support its findings, while Farm Bureau claims the issue should not have been submitted at all, because of a lack of supporting evidence.

■■■■■■ The rationale of the reasonable expectation doctrine is that, in a contract of adhesion, such as an insurance policy, form must not be exalted over substance, and that the reasonable expectations of the insured may not be frustrated "even though painstaking study of the policy provisions would have negated those expectations." *Rodman v. State Farm Mutual Insurance Co.,* 208 N.W.2d at 906 (*quoting* Keeton, Insurance Law—Basic Text § 6.3(a), at 351 (1971)); *see also C & J Fertilizer, Inc.,* 227 N.W.2d at 176–77. Reasonable expectations giving rise to application of the doctrine may be established by proof of the underlying negotiations or inferred from the circumstances. Restatement (Second) of Contracts § 237, at 541 (comment *f*). The doctrine will apply here if the exclusion (1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction. *Id.* The doctrine is well illustrated by *C & J Fertilizer* : Under the terms of a burglary policy the insurer agreed "[t]o pay for loss by burglary or by robbery of a watchman, while the premises are not open for business . . . ." In the definition section of the policy, however, burglary was defined in such a way as to exclude any occurrence which was not evidenced by marks left on the exterior of the premises. This definition was not consistent with a layman's concept of the crime, nor with its legal interpretation. In effect, the definition overrode the dominant purpose for purchasing the policy and in effect eviscerated the coverage specifically bargained for, protecting against burglary. 227 N.W.2d at 176–77.

■■■■■■ In the present case, Sandbulte does not contend he was actually misled by the policy language, because he had not read it. He argues, however, that an ordinary layman would reasonably expect coverage under the circumstances. If an ordinary layman would not misunderstand the

policy's coverage as to this occurrence, and there were no circumstances attributable to the insurer which would foster coverage expectations, the reasonable expectation doctrine is inapplicable. *See Rodman v. State Farm Mutual Automobile Insurance Co.*, 208 N.W.2d at 906–907. The issue here is whether an ordinary layman could reasonably expect coverage for a pickup accident on a highway at a point not immediately adjoining the insured premises. Sandbulte argues it was a jury issue and there was substantial evidence to support the verdict. Farm Bureau argues that, as a matter of law, an ordinary layman could not reasonably expect such coverage.

Cases discussing the reasonable expectation argument in similar factual situations have consistently held as a matter of law that it is not reasonable for a purchaser of a premises liability policy to expect coverage for motor vehicle accidents away from the premises. In a case involving the "ways immediately adjoining" language, one court was asked to find coverage provided for an intersection collision near, but not adjoining, the insured premises. The insured argued that this was a reasonable expectation. The court said:

> We do not believe that the average purchaser of homeowners' liability insurance reasonably expects that it covers him for liability in the event of an automobile accident occurring at a place or in circumstances such as those here presented. We would think he looks only to his automobile liability policy for such protection. Denial of coverage in the instant case so as to effectuate the fair and easily deduced intendment of the plain exclusionary language used in the policy will thus not offend the rule that insurance should "effectuate the reasonable expectations of the average member of the public who buys it." *Kievit v. Loyal Protect. Life Ins. Co.*, 34 N.J. 475, 488, 170 A.2d 22 (1961).

*Lendway v. Muse*, 83 N.J.Super. at 261, 199 A.2d at 394 (1964); *accord, Herzog v. National American Insurance Co.*, 2 Cal.3d 192, 197, 465 P.2d 841, 843, 84 Cal.Rptr. 705, 707 (1970). In *Herzog*, the argument was made, under a policy with the same exclusionary language as the present case, that motor vehicle coverage away from the insured premises was a reasonable expectation of the insured and that the insurer should be held responsible for it. The court said:

> To the extent that [a motor vehicle] is generally and normally used away from the home on streets and highways, it presents hazards not closely associated with the home, for which other insurance is customarily carried and is generally understood to afford coverage.
>
> The reasonable expectations of the insurer in a homeowner's policy—as additionally manifested in the type of information sought upon application for such a policy and the relatively small premiums charged—clearly do not contemplate coverage for automobile-related accidents . . .; other insurance, with a premium commensurate to the increased risks, is available for that purpose, and, as in the case at bench, is customarily obtained by the homeowner.
>
> From the foregoing it clearly appears that neither the intent of the parties nor their reasonable expectations contemplate that the personal liability provisions of a homeowner's policy should provide coverage for automobile accidents occurring away from the immediate vicinity of the home. Thus, any construction of the policy which would provide such extended coverage would be contrary to the extent and reasonable expectations of both insurer and insured.

*Id.* at 197–98, 465 P.2d at 843, 84 Cal.Rptr. at 707. Motor vehicle usage greatly expands the exposure to liability, and it is not reasonable to expect insurance on motor vehicles as an appendage to a premises liability policy at a premium much lower than that for comparable limits in a motor vehicle policy. In the present case, the annual premium for the $300,000 policy was $18.96 per year. While coverage cannot, of course, be related in direct proportion to premiums paid, we think that fact bears upon the reasonableness of Sandbulte's expectations.

In analogous contexts we have held as a matter of law that an ordinary person could not reasonably expect coverage under the circumstances. In *Central Bearings Co. v. Wolverine Insurance Co.*, this court held that a premises liability policy could not reasonably be expected to cover an accident in which a cable manufactured by it broke during usage. We said

> the insured as a reasonable person would understand the policy coverage purchased meant the insured was not covered for loss if the "accident" with concomitant damage to a victim occurred away from the premises and after the operation or sale was complete. For such protection the insured would have to purchase the additional coverage offered by the terms of the policy. . . . We therefore reverse with instructions to dismiss plaintiff's petition at plaintiff's cost.

179 N.W.2d at 449 (citations omitted). In *Rodman v. State Farm Mutual Automobile Insurance Co.*, the policy excluded coverage for bodily injury to the insured "or any member of the insured residing in the same household of the insured." The insured contended that he had merely continued the coverage purchased by his wife before their marriage, that he had no reason to expect this exclusion in the policy, and most other companies did not have such exclusions in their policies. We said:

> In the present case we do not believe an ordinary insured would reasonably believe the policy's bodily injury liability coverage applied to him after reading the [exclusionary language] . . . . Policies containing this exclusion have uniformly been enforced in accordance with their terms.

208 N.W.2d at 907.

Similarly, we conclude under the facts of this case an ordinary person could not reasonably expect coverage for a motor vehicle accident on the highway at a point not immediately adjacent to the insured premises. This provision was not "bizarre or oppressive", nor did it eviscerate any terms agreed to or eliminate the dominant purpose of the transaction so as to give rise to the reasonable expectation doctrine. *See* Restatement (Second) of Contracts § 237, at 541 (comment *f*). It was therefore error to submit the issue to the jury.

■ *IV.* Sandbultes contends that all of the discussion concerning the exclusion of coverage of motor vehicles is really unnecessary because the pickup in this case was not a motor vehicle as that term is used in the policy. Because it was mainly used on the farm premises to haul feed, hay and fuel, it was more like a farm machine, they contend, and should be treated as such for insurance purposes. The trial court submitted this issue to the jury in the form of a special verdict. The jury was asked to respond as to whether or not "the ordinary person" would conclude that the policy term "motor vehicle" included the Sandbulte pickup. The jury responded in the negative.

The Squire IV policy provided this definition:

> Motor vehicle—means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) but does not include, except while being towed by or carried on a motor vehicle, any of the following:
>
> .  .  .  .  .
>
> b. farm tractor, farm trailer, farm implement or farm machinery while such equipment is used in connection with farm premises;
> c. any other mobile farm equipment not licensed for motor vehicle registration and used exclusively on an insured farm premises except for occasional travel from one insured farm premises to another insured farm premises; or
> d. if not subject to motor vehicle registration, any other equipment which is designed for use principally off public roads.

A similar argument was made and rejected in *Connolly v. Standard Casualty Co.*, 76 S.D. at 97, 73 N.W.2d at 121. The Sandbulte pickup was clearly "designed" for highway use under the policy definition,

regardless of the actual use made of it. And the fact it was being driven on the highway at the time of the accident attests to the fact it was, at least occasionally, being used as a highway vehicle. It was licensed as a motor vehicle and was insured as such. The policy definition was not ambiguous and the court should have so concluded as a matter of law.

The judgment must be reversed.

REVERSED.

All judges concur, except UHLENHOPP, LeGRAND, ALLBEE and SCHULTZ, JJ., who concur in part and dissent in part.

UHLENHOPP, Justice (concurring in part, dissenting in part).

I concur in the result and in all of the opinion except the adoption of the theory of implied warranty, in division II. I dissent from that part of the opinion.

LeGRAND, ALLBEE and SCHULTZ, JJ., join in this dissent.