**NEW HAMPSHIRE INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**NATIONAL RECREATION EQUIPMENT COMPANY, Defendant-Appellant.**

No. 2–66386.

Court of Appeals of Iowa.

March 23, 1982.

Harry T. Watts and Jon P. Sullivan of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for defendant-appellant.

David F. McGuire, Cedar Rapids, for plaintiff-appellee.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

CARTER, Justice.

Defendant insured appeals from judgment entered for plaintiff insurance carrier after trial to the court in an action to recover amounts claimed to be owed plaintiff for its payment of product liability claims for which the insured was partially responsible by reason of a specified deductible clause in the policy.

Two policies of liability insurance covering product liability claims are involved in this litigation. The first covers the period from November 12, 1973, through November 12, 1974; the second, as initially written, covers the period from November 12, 1974, through November 12, 1975. The latter policy was, however, terminated by the plaintiff on May 24, 1975, in accordance with the policy provisions relating to cancellation.

Both of these liability policies provided for deductible amounts on a per claim basis which the insured had to pay before any liability befell the insurance carrier. For ease in administration of claims, however, it is provided in the policies that the plaintiff insurance company may proceed to settle

claims by advancing full payment and then seek reimbursement of the deductible amounts from the insured.

The action by the plaintiff insurance carrier is to recover deductible amounts owed it by the defendant insured for claims paid under the 1973–1974 policy. The defendant does not dispute the amount of deductibles owed and unpaid under that policy, but, by answer and counterclaim, asserts that it has overpaid deductibles to the plaintiff under the 1974–75 policy in an amount exceeding that which is yet owed under the 1973–74 policy. Following trial of the issues, the court below denied defendant's claim of overpayment under the 1974–75 policy and entered judgment for plaintiff for the agreed amount owing under the 1973–74 policy.

The sole issue in the trial court and on this appeal concerns whether the aggregate limit on deductibles which the insured might be required to pay under the 1974–75 policy should be proportionately reduced as a result of the fact that the policy was cancelled after 53% of the one-year policy period had expired. The trial court concluded that the policy did not contemplate such proportionate reduction. On appeal, the defendant insured contends that this was error based on (1) the plain meaning of the wording of the policy as to "annual" stop loss or aggregate deductibles; (2) the doctrine of reasonable expectations of the insured; and (3) the doctrine of "implied warranty" for a particular purpose. Defendant also urges on appeal that the trial court applied an improper burden of proof. After due consideration of all of these claims, we affirm the trial court.

I. *Meaning of "$50,000 Annual Stop Loss Clause."* The 1974–75 policy provides for a deductible amount of $10,000 for each products liability claim covered by the policy which the insured must pay before the insurance company has any liability. By special endorsement, however, it is provided that "it is hereby understood and agreed that this policy incorporates, under the products liability section, a $50,000 annual stop loss clause." The parties agree that the purpose of this provision was to establish an aggregate maximum of $50,000 in product liability claims for which the insured could be held responsible by reason of the aforesaid deductible provisions of the policy. It is defendant's contention that because the words "annual" and "$50,000" both modify the aggregate maximum deductible, then the aggregate maximum deductible for a semi-annual period should be approximately half of the annual aggregate.

In spite of the appeal which flows from this argument when these words are considered in isolation, we agree with the trial court that defendant's contention does not represent a reasonable interpretation when the policy is considered as a whole. The effect of the endorsement at issue is that once $50,000 in product liability claims has been paid by the insured, its responsibility for deductible amounts stops. We find no basis for holding that this occurs before such payment has been made by the insured. The exhaustion of the maximum aggregate deductible is not something which can be expected to occur rateably throughout the policy period. Any determination of when the aggregate deductible is exhausted depends entirely upon the frequency with which claims covered by the policy are presented and paid. For this reason we can find no basis to assume that the parties intended that there be a proportionate reduction in the maximum deductible in the event of early cancellation.

We find it instructive to consider defendant's proposed interpretation of the "stop loss" clause in conjunction with the insurance company's limits of liability under the policy. As to bodily injury and property damage claims, the policy imposes an aggregate limit of liability of $500,000 "for all damages because of all bodily injury and property damage which occurs during the annual period while this policy is in force." We can find no justification for proportionately reducing the aggregate limit on deductibles under the policy without a similar proportionate reduction in policy limits—a

circumstance which would clearly be untenable.[1]

Based on the foregoing considerations, we believe that the insured's remedy for cancellation of the policy prior to the expiration of the policy period lies entirely in a pro rata refund of the annual premium. It is noteworthy that under the policy such refund is not proportionate to the time the policy was in force, but, rather, is based on the ratio of actual product sales during the time the policy was in force to estimated annual sales. From this we must conclude that if the defendant were entitled to a proportionate reduction of the aggregate maximum deductible, which we hold it is not, there is, in any event, no reason to conclude that such reduction should be based on the period of time the policy was in force.

■ II. *Reasonable Expectation and Implied Warranty.* We next consider together the contentions of the defendant that the decision of the trial court runs counter to the doctrines of reasonable expectations of the insured and "implied warranty" for a particular purpose. The case of *Farm Bureau Mutual Ins. Co. v. Sandbulte,* 302 N.W.2d 104 (Iowa 1981), is cited by defendant in support of his right to recover under either or both of these theories.

We have considered defendant's contentions in light of the *Sandbulte* decision and cannot agree that the trial court's interpretation of the policy was incorrect based upon either or both of the theories upon which defendant relies. The so-called "stop loss" clause was not a contract of adhesion but rather a special endorsement amending the extent of the standard per claim deductibles otherwise contained in the printed policy. In interpreting this clause, we are not called upon to determine what could have been provided or should have been provided, but rather what was intended

based upon a reasonable interpretation of the policy language. Iowa R.App.P. 14(f)(14). Because we have found that the trial court's interpretation reflects the intention of the parties based upon both the language of the policy and the surrounding circumstances, it cannot be said that such interpretation frustrates the reasonable expectations of either party. Nor should the doctrine of implied warranty of purpose be applied in the present case so as to imply a warranty which is inconsistent with the intention of the parties as found by the trial court.

III. *Burden of Proof.* Finally, we consider defendant's claim that the trial court applied an improper burden of proof in arriving at its decision. While we seriously question whether the trial court erred in this regard, we conclude that on the facts of the present case, the result would be the same regardless of which party bears the burden of proof.

We have considered all issues presented and find no basis for reversal. The judgment of the trial court is affirmed.

AFFIRMED.

---

1. It is not accurate to assume, as inferred by defendants, that the plaintiffs, through the cancellation of the policy, placed a lid on its future exposure for payment of claims. At the time the policy was cancelled, the plaintiff had no way of knowing about occurrences wherein damages were sustained during the time the policy was in force but as to which no notice of claim had yet been given to the insured or the insurance carrier. Notwithstanding its cancellation of the policy, plaintiff is potentially liable for such claims to the extent of the aggregate policy limit.