# IN THE COURT OF APPEALS OF IOWA

No. 16-1189
Filed January 11, 2017

**CARL BUDNY,**
Plaintiff-Appellant,

**vs.**

**MEMBERSELECT INSURANCE COMPANY,**
Defendant-Appellee.

_____

Appeal from the Iowa District Court for Johnson County, Christopher L. Bruns, Judge.

Insured appeals from district court's order granting summary judgment to insurer in policy dispute. **AFFIRMED.**

L. Craig Nierman of Nierman Law, P.L.C., Coralville, for appellant.

Matthew J. Nagle and Cassandra C. Wolfgram of Lynch Dallas, P.C., Cedar Rapids, for appellee.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

Carl Budny appeals from the district court's order granting summary judgment in favor of MemberSelect Insurance Co. (MemberSelect). Budny claims the district court erred in granting summary judgment.

I.

On or around August 11, 2014, Budny purchased homeowners insurance from AAA Insurance, a MemberSelect company. He was given the option to purchase several riders. Budny purchased two riders, "H-290: Personal Property Replacement Cost," and "H-500: Protection Plus Homeowners Package." The latter also included within it "H-210: Special Jewelry and Furs Coverage." There were approximately twenty riders Budny did not select, including, relevantly, "H-95: Sewer, Drain and Sump Water Backup Coverage." Budny subsequently renewed his coverage in August 2015.

Budny's insurance policy provides:

> 13. [We cover direct physical loss caused by] **[a]ccidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance.
>
> **We** will not cover loss:
>
> a. to the system or appliance from which the water or steam escapes;
> b. caused by or resulting from freezing;
> c. caused by or resulting from water or any other substance from outside the **residence premises** plumbing system that enters the dwelling or additional structure through household sewers, drains or drainage fixtures or a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or
> d. water or any other substance originating from inside the dwelling or additional structure which escapes the

plumbing system through a floor drain inside the dwelling or additional structure.

Additionally, under the heading "**EXCLUSIONS**," the policy provides:

3. [We will not cover loss which consists of or is caused by] [w]ater damage, meaning:

   a. flood, surface water, waves, storm surge, tidal water, tsunami, seiche or overflow of a body of water from any source. **We** do not cover spray from any of these, whether or not driven by wind; or
   b. water or any other substance from outside the **residence premises** plumbing system that enters the dwelling or additional structure through household sewers, drains or drainage fixtures or a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or
   c. water or any other substance originating from inside the dwelling or additional structure which escapes the plumbing system through a floor drain inside the dwelling or additional structure; or
   d. water or any other substance originating from any source on or below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or an additional structure, sidewalk, driveway, foundation or swimming pool.

The H-95 rider Budny did not purchase provides:

**We** will pay for accidental direct physical loss to covered property described below caused by:

   1. water or any other substance from outside the **residence premises** plumbing system that enters the dwelling or additional structure through household sewers, drains or drainage fixtures or a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or
   2. water or any other substance originating from inside the dwelling or additional structure which escapes the plumbing system through a floor drain inside the dwelling or additional structure.

In November 2015, sewage backed up into Budny's basement, causing

water damage. He reported the damage to his insurance agent, Marty Lee, on

November 19. According to Budny, Lee (or Lee's staff) told Budny the loss was covered. Lee denied making such a representation. Budny hired ServPro to clean and restore the basement. According to Budny, he hired ServPro based on Lee's representation.

On December 14, the insurance company denied Budny's claim, citing the **EXCLUSIONS** paragraph. On January 12, 2016, Budny filed the instant petition, asserting claims for breach of contract, waiver, promissory estoppel, unjust enrichment, reasonable expectations, implied warranty, and bad faith. The district court granted MemberSelect's motion for summary judgment, and Budny filed a timely notice of appeal.

II.

We review the district court's grant of summary judgment for correction of errors at law. *See Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013). Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The court views the summary judgment record in the light most favorable to the party resisting the motion for summary judgment and "indulge[s] in every legitimate inference that the evidence will bear in an effort to ascertain the existence" of a genuine issue of material fact. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). If the summary judgment record shows that the "resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on

summary judgment." *Wilson v. Darr*, 553 N.W.2d 579, 582 (Iowa 1996). In addition, summary judgment is correctly granted where the only issue to be decided is what legal consequences follow from otherwise undisputed facts. *See Emmet Cty. State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989).

III.

A.

Budny contends MemberSelect waived any policy defenses when Lee told Budny the claim was covered. Waiver is "the voluntary or intentional relinquishment of a known right." *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302, 304 (Iowa 1982). The essential elements of waiver are the existence of a right, actual or constructive knowledge of the right, and an intention to relinquish the right. *See IMT Ins. Co. v. Paper Sys., Inc.*, No. 00-373, 2001 WL 98545, at *3 (Iowa Ct. App. Feb. 7, 2001).

Whether Lee represented to Budny that his claim would be covered is a disputed fact. But it is not a material one. *See, e.g., Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 701 (Iowa 2016) ("Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."). Even if we assume, viewing the record in the light most favorable to the nonmoving party, Lee did make such a statement, Budny cannot prevail. Lee lacked the authority to waive the clear dictates of the policy, including the provision stating, "No change or waiver may be effected in this policy except by endorsement issued by **us**." Budny contends otherwise, citing several cases. *See Carver v. Preferred Accident Ins. Co. of N.Y.*, 256 N.W. 274, 276 (Iowa 1934); *Ruthven v. Am. Fire Ins. Co.*, 71 N.W. 574,

575 (Iowa 1897); *Stevens v. Citizens' Ins. Co.*, 29 N.W. 769, 770–71 (Iowa 1886). However, each of those cases deals with notice provisions of the insurance policy, viz. technical defenses and procedural issues. In Iowa, "the doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all." *Westfield Ins. Cos. v. Econ. Fire & Cas. Co.*, 623 N.W.2d 871, 879 (Iowa 2001) (collecting cases). The district court concluded Budny's breach-of-contract claim failed as a matter of law because the policy specifically excluded coverage of the claim. Budny has not appealed that issue. Under the circumstances, waiver cannot create liability for coverage not part of the policy. The district court did not err in granting summary judgment on this claim.

B.

Budny makes a related promissory-estoppel claim, arguing Lee's representation along with Budny's detrimental reliance thereon entitles Budny to relief. "The theory of promissory estoppel allows individuals to be held liable for their promises despite an absence of the consideration typically found in a contract." *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 532 (Iowa 2015). "Promissory estoppel requires a party to prove '(1) a clear and definite oral agreement; (2) proof that plaintiff acted to his detriment in reliance thereon; and (3) a finding that the equities entitle the plaintiff to this relief.'" *Id.* (citation omitted).

Budny's claim fails on all three counts. First, there was no "clear and definite" oral agreement for services Budny did not contract for. Indeed, as explained above, such an agreement would be contrary to Iowa law. *See*

*Westfield*, 623 N.W.2d at 879. And given the dispute on this issue, we fail to see how any such agreement would have been "clear and definite." *See Ziskovsky v. Ziskovsky*, No. 13-0360, 2014 WL 69620, at \*4 (Iowa Ct. App. Jan. 9, 2014) (finding no meeting of the minds where parties to alleged contract could not articulate what contract terms were). Second, Budny cannot prove he acted to his detriment in reliance on Lee's representation. Budny argues he would not have hired ServPro but for Lee's statements to him. Even viewing the record in the light most favorable to Budny, we find this unlikely. Budny had raw sewage in his basement. If he did not hire ServPro, he would have hired someone else. Whatever difference in expense might have resulted is not sufficient to satisfy this element. *See Gaia House Mezz L.L.C. v. State St. Bank & Tr. Co.*, 720 F.3d 84, 92 (2d Cir. 2013) (requiring "substantial" detriment); *Harris Constr. Co. v. GGP-Bridgeland, L.P.*, 698 F. Supp. 2d 723, 726 n.5 (S.D. Tex. 2010) (requiring a showing one "materially" changed his position); *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Commw. Ct. 2009) (requiring "substantial" change in position). Third, we would not necessarily say the equities favor Budny's relief. He contracted for certain services and now seeks additional ones he opted not to buy. While his situation is unfortunate, it would be inequitable to force insurers to provide coverages policyholders request ex post. "We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase." *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015). Inherent in most insurance coverage is the risk of damage not covered by the policy. The district court did not err in granting summary judgment on this claim.

C.

Budny argues it was error to dismiss his claim of implied warranty because there was a factual dispute as to the intended purpose of his insurance purchase.

Insurance policies in Iowa come with an implied warranty. *See Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 110 (Iowa 1981). To recover on a theory of implied warranty, an insured must show "(1) that the insurer had reason to know the particular purpose for which the policy is purchased; (2) that the insured relied upon the company's skill or judgment in furnishing such coverage; and (3) that the resulting implied warranty was breached." *Id.* "Whether or not such a warranty arises is usually a question of fact to be determined from the circumstances of the parties' negotiations." *Id.* A "particular purpose" differs from an ordinary purpose "in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Id.* A "particular purpose" thus "respond[s] to a particular need." *Id.*

We find no error in the district court's dismissal of this claim. First, the coverage Budny seeks was excluded by the plain language of the policy. There was a rider available to provide the coverage Budny sought. He did not purchase this rider in 2014 or when he renewed his policy in 2015. The law of implied warranty cannot be used to create coverage for risk specifically excluded by the policy. Second, a "'particular purpose' differs from the ordinary purpose

for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business." *Id.* "To give rise to an implied warranty, the furnishing of the policy must respond to a particular need; furnishing it for general purposes is not enough." *Id.* There is nothing in the summary judgment record supporting the inference Budny purchased the policy for a particular purpose distinct from those of other persons purchasing homeowners insurance. To hold the implied warranty created coverage where specifically excluded by the policy would mean "there would be virtually no limits of exposure to liability" and the "policy would be merely a framework of coverage to be filled in as occurrences arose." *Id.* at 112. The result is untenable.

D.

Finally, Budny asserts MemberSelect acted in bad faith. The elements of bad faith are (1) the insurer lacked a reasonable basis for denying the claim and (2) it knew or had reason to know it lacked a reasonable basis. *See Galbraith v. Allied Mut. Ins. Co.*, 698 N.W.2d 325, 328 (Iowa 2005). A reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law. *See Sampson v. Am. Standard Ins. Co.*, 582 N.W.2d 146, 149 (Iowa 1998). "A claim is 'fairly debatable' when it is open to dispute on any logical basis." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). "Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable." *Id.*

MemberSelect had a reasonable basis for denying the requested coverage—to wit, that Budny did not contract for said coverage. The district

court held Budny did not contract for the coverage. Budney has not appealed the issue. The district court did not err in granting summary judgment on this issue.

IV.

It was not error for the district court to grant summary judgment on all claims. For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**